## FORT WORTH & DENVER CITY RY. CO. v. GIFFORD.

### No. 15300.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 21, 1951.

Rehearing Denied Jan. 18, 1952.

Seth Barwise, of Fort Worth, Stanley C. Kirk, and H. M. Muse, both of Wichita Falls, for appellant.

Allen, Locke & Crampton, Peery & Kouri, Bob L. Wilson, and Irvin J. Vogel, all of Wichita Falls, for appellee.

CULVER, Justice.

The Fort Worth & Denver City Railway Company brings this appeal from a judgment rendered against it for personal in-

juries sustained by the appellee, O. Glenn Gifford, in the sum of $72,000.

At the north end of the railway yards in the City of Wichita Falls, the tracks are elevated on an earth embankment some fourteen feet above the level of the adjacent terrain and then cross over an underpass for motor and pedestrian traffic. On June 27, 1950, appellee and another young man had arrived in Wichita Falls and were seeking to hitchhike their way back to California. They had never been in Wichita Falls before. After attempting unsuccessfully to obtain a ride, they had spent the greater part of the day in this vicinity and had proceeded through the underpass and south for a few hundred yards along the east side of the elevated tracks where they remained most of the afternoon and the early part of the evening. Appellee relates that some one had told him that if they went to the highway leading west out of the city, they might obtain a ride, as trucks commonly passed along there at night headed west. Appellee testified that accordingly, with the intention of taking advantage of this information, about 10 p.m., they proceeded to walk up and over the embankment and railway tracks. They had crossed one track when they were struck by a moving switch engine pulling a train of cars. Gifford, the appellee, sustained serious injuries and his companion was killed. The jury resolved all issues of negligence in favor of the appellee and accordingly judgment was rendered in his favor.

The jury found that appellant's right-of-way at the place in question had long been used by the general public as a pathway and that appellee was a licensee; that appellant and its agents were negligent in failing to keep a proper lookout, to ring the bell or blow the whistle, and to have the headlight turned on and that such acts were the proximate cause of the injuries; further that the failure on the part of appellee to hear or observe the approach of the train was not negligence and that he did not fail to keep a proper lookout.

Appellant brings forward a number of points of error. In the first group, it asserts the trial court erred in overruling its motion for peremptory instruction, its motion for judgment, and its motion non obstante veredicto, for the reasons: (a) That the appellee was a trespasser at the time in question, therefore, the appellant owed him no duty other than not to wantonly and wilfully injure him, and that there was no pathway commonly and habitually used by the public at the place where appellee attempted to cross the tracks. (b) That the appellee left a safe place, namely, a path running along the east side of the railroad track, and went to a dangerous place by attempting to cross the tracks at a place that was not a regular pathway. (c) That he was guilty of negligence as a matter of law in failing to keep a proper lookout to see and hear the train in question before attempting to cross. Appellant next asserts that the trial court erred in overruling certain exceptions to the court's charge; that a new trial should have been granted by reason of misconduct of the jury and that the amount of the judgment is excesssive.

Considerable testimony was introduced on the issue of the use by the public of the railway tracks and right-of-way in walking along, over and across the same. The testimony shows without substantial contradiction that people would, from time to time, climb the embankment, walk along the tracks and cross over, both in the day and at night. Photographs show pathways leading up to the top of the embankment in various places and along the tracks. These paths were not so clearly defined, at least the ones leading up to the top of the embankment, so that it could be said the public used any particular place in the vicinity as a means to climb up and cross over. While of course no paths would show on the tracks and the rock ballast, yet there is grass between the different sets of tracks and an aerial photo does not show any regular defined pathway crossing from one side of the embankment to the other. The appellee testified that in the afternoon as he passed along the east side of the embankment, he saw some paths leading up to the top, but he was unable to say that he was on any one of these paths at the time of the accident

and the exact place where he was struck is not accurately determined. We hold there was sufficient evidence to support the jury's finding that appellee at the time of the injury was a licensee. Be that as it may, the decisions seem to make little distinction as to whether the appellee was a trespasser or licensee, in so far as the duty the railway company owed to him is concerned. Sears v. Texas & N. O. Ry. Co., Tex.Com.App., 266 S.W. 400. The following is quoted from an opinion by Chief Justice Hickman of the Supreme Court, then a member of the Eastland Court of Civil Appeals, in Wichita Falls R. & F. W. Ry. Co. v. Crawford, 19 S.W.2d 166, 169: "A railroad company owes the duty to any one in its pathway, even though he be a trespasser, to exercise ordinary care by keeping a reasonable lookout, and is liable for injuries resulting from a breach of its duty in this regard, unless, of course, the person injured was himself guilty of contributory negligence." Fort Worth & D. C. Ry. Co. v. Longino, 54 Tex.Civ.App. 87, 118 S.W. 198.

█ The most serious point raised on this appeal, and the one we think decisive, was whether or not the appellee, in stepping in front of the train, was guilty of negligence as a matter of law. A number of authorities are presented, but none of course present exactly the same fact situation as dealt with here. The rule is that as to whether or not "ordinary care" was exercised by the injured person is one of fact to be determined by the jury unless the established facts are such that the mind can draw no other conclusion than that the plaintiff was "negligent." Galveston, H. & S. A. Ry. Co. v. Duty, Tex.Com.App., 277 S.W. 1057; 30 Tex.Jur., Negligence, pars. 90, 153.

█ The only witness to the accident was the appellee himself. Admittedly, he did not see the engine before it struck him. He had been sitting alongside this railway embankment for several hours, both before and after dark. He knew the tracks were there; he knew that switching operations had been going on. He and his companion climbed up the embankment, crossed a switch track and then, as summarized by appellee in his brief, "as his companion stepped ahead of him into the second track and plaintiff stepped into the track with his left foot, that they were struck by the train." Appellee states that before attempting to cross, he and his companion stopped, looked in both directions and listened and that he saw nothing and heard nothing, except switching in the main yards several blocks to the south. At that time, this diesel locomotive, with its string of box cars, was moving slowly, only a few feet away. What could have prevented him from seeing or hearing the train at that distance? The sky was clear with less than one-tenth cloud coverage. His own witnesses, some two or three hundred feet away, heard the noise of the train and saw it as it proceeded north. It is argued that these witnesses standing below the embankment could see the train because it was "skylined" above them. Certainly it would have been "skylined" to this unfortunate young man and his companion as they climbed the embankment if they had looked in that direction. When they arrived on top of the embankment, it would have blotted out their view of the skyline if they had looked. Two of plaintiff's witnesses testified that they saw no headlight on the locomotive and one asserted that when the train reversed and then stopped, evidently when the train crew saw the bodies of these two young men, the headlight was turned on. In the light of common experience, the positive testimony of the train crew that the headlight was burning, and the necessity for it to burn to enable them to perform their duties, it is somewhat difficult to believe to the contrary. Nevertheless, the fact that the bodies were discovered by the train crew would indicate that there was considerable visibility along the tracks and would further justify the conclusion that the train would have been visible to the appellee. In addition, however, so far as the visibility of the moving train was concerned, there were street lights up and down the street which ran adjacent to the railroad embankment on the west side which were almost, if not equal, in height to the top of the embankment. The Supreme Court case of Gulf, C. & S. F. Ry. Co. v.

Gaddis, Tex.Com.App., 208 S.W. 895, 896, holds: "It is well settled in this state that one who crosses a railroad track must, as a matter of law, exercise some degree of care for his own safety." In that case, the plaintiff was held guilty of negligence as a matter of law, notwithstanding the negligence of the railroad company in operating its train at a rate of speed in excess of that allowed by law. In that connection the court comments as follows: "Had Gaddis, upon approaching the crossing, seen the train at an approximate distance of 60 or 70 feet, when he himself was some 15 feet from the track, and in good faith believed, judging from the distance and speed of the train, that he had ample time to cross in safety, it may be, under the circumstances, that a jury would be warranted in finding that he was not guilty of negligence." The Gaddis case is quoted with approval and relied upon by the majority in the Supreme Court case of Texas & N. O. R. Co. v. Burden, 146 Tex. 109, 203 S.W.2d 522, in which a pedestrian struck by a train on a grade crossing was held to be guilty of negligence as a matter of law.

In the early case of Sabine & E. T. Ry. Co. v. Dean, 76 Tex. 73, 13 S.W. 45, 46, the deceased was held to be negligent as a matter of law where he was struck on a crossing that was commonly used by men passing back and forth and evidently had neither looked nor listened before attempting to cross. The court held, "The fact that, on account of the noise of the mill, he could not hear the approach of the cars, cannot be held to excuse him from the duty of using his eyes to see them. If anything, it emphasized that duty."

■ We have reviewed the cases cited by appellee. They illustrate the liberal views of the Texas courts which set aside jury verdicts with considerable reluctance, even as we do here. None of them, however, do we construe as holding that one who steps immediately in front of a moving train, knowing the tracks to be in use, and takes no precaution for his own safety is not guilty of negligence as a matter of law. While we are aware that appellee says he stopped, looked and listened before going upon the tracks, we hold that the circumstances and physical facts speak louder than words and show beyond any doubt in our mind that he neither looked nor listened. Had he done so, he could not have failed to be aware of the train immediately upon him.

■ Judge McClendon's views in the Gaddis case, supra, we think are particularly appropriate here. "But in the last analysis each court is charged with the duty and must for itself determine the question of reasonableness of a particular conclusion from a given undisputed state of facts; and, with all deference to those with whom we here differ, we have been unable to reach any other reasonable conclusion but that contributory negligence as a matter of law is shown in this case."

The objections to the charge leveled by appellant are numerous and comprise seventeen pages. Manifestly, space will not permit discussion of them separately and it must be sufficient to say that after examination we are of the opinion that they are not sufficiently meritorious to warrant a reversal and the same are overruled.

■ The point is made by appellant that inasmuch as the jury returned a verdict of some $4,000 in excess of what appellee sued for, and followed closely the figures of damage placed upon the blackboard by appellee's attorney, therefore, the verdict was affected by bias, sympathy and prejudice sufficiently to require a new trial. We are of the opinion that the point is not well taken. The excess was stricken by the trial court. Rule 328, Texas Rules of Civil Procedure. No authorities are cited supporting this contention of appellant. On the contrary, there are many authorities to the effect that excessiveness of the verdict alone does not require the granting of a new trial. Thompson v. Clement, Tex. Civ.App., 202 S.W.2d 341; Hartford Accident & Indemnity Co. v. Moore, Tex.Civ. App., 102 S.W.2d 441; Lewis v. Smith, Tex.Civ.App., 198 S.W.2d 598; Ackerman v. Pride of West Lodge No. 12, Tex.Civ. App., 217 S.W.2d 55.

Point 11 complains of a question asked by appellee's counsel of a medical witness as to whether or not plaintiff could sell pencils. The witness answered the question in the affirmative before defendant's timely objection was interposed, which was sustained by the court and the jury instructed neither to consider the question nor the answer. In our opinion, the action of the court was sufficient and under the circumstances the verdict of the jury was not substantially affected by the question and the answer.

The last point raised by the appellant is that the amount of the damages awarded is excessive. This point becomes immaterial in view of our holding that the undisputed testimony shows, as we believe, that the appellee, taking no care for his own safety and stepping on the railroad track immediately in front of the engine which struck him, was negligent as a matter of law. The cause must therefore be reversed and rendered that appellee take nothing.

Reversed and rendered.