**J. M. GREEN, Appellant,**

v.

**Fred P. RUDSENSKE, Appellee.**

No. 13357.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 7, 1959.

Rehearing Denied Feb. 4, 1959.

Robert Lee Bobbitt, Park Street, Walter Powell Gray, Hugh J. Fitz-Gerald, San Antonio, Sharpe, Cunningham & Garza, Brownsville, for appellant.

Carter, Stiernberg & Skaggs, Harlingen, for appellee.

BARROW, Justice.

Fred P. Rudsenske sued J. M. Green for damages for personal injuries sustained by Mildred Rudsenske in an automobile collision. The case was tried before a jury and judgment was rendered in favor of plaintiff and against defendant for damages in the sum of $48,668.95, from which judgment J. M. Green has appealed.

Appellant, by his first three points, complains of some sixty incidents of alleged misconduct on the part of appellee's counsel and members of the jury and of the court's ruling thereon, and also of the court's failure to grant any of appellant's numerous motions for a mistrial made during the trial. We shall not unduly lengthen this opinion by commenting on each of these events. Most of the complaints are directed toward alleged improper remarks of counsel for appellee. Appellant claims appellee's counsel intimated that appellant's counsel was delaying the trial. The careful trial judge on several occasions instructed the jury not to consider the remarks of counsel. On most of these occasions no objection was made nor exception taken. Appellant's counsel waited until some time later and then made lengthy motions for a mistrial based upon such accumulated incidents. Some of the complaints are addressed to statements of jurors in asking questions during the trial. This, according to the record, occurred seven times during

a two and one-half weeks' trial, when the jurors did not understand the particular testimony, and when medical testimony was being introduced which is difficult for laymen to understand. We perceive nothing harmful, disrespectful, nor indicating any prejudice on the part of the jury. Later in the trial, a juror remarked, concerning appellant's counsel, "Your Honor, could I get him to lower his voice a little? It is hurting my ears, lot worse than him talking so quiet." At the time appellant's counsel admitted that he was speaking too loud, but fifty-seven pages later in the record made a motion for a mistrial based upon this incident. None of these complaints reflect harmful error. Rule 434, Texas Rules of Civil Procedure.

Appellant also complains of certain statements alleged to have been made by appellee's counsel during the examination of the jury. We find no record of the examination of the jury, and there is nothing in the record to show that such statements were made, until, after the jury was impaneled and testimony was being introduced, appellant's counsel while making a motion for a mistrial asserted that they were made. No proper bill of exception appears in the record. We are not authorized to consider such complaint. Rule 372, T.R.C.P.

Appellant complains of an incident during the trial. While appellee's counsel was examining one of his medical witnesses, and had brought out that the witness had testified in other cases, the following transpired:

"Q. And were any of those times —what cities, if you remember?

"A. Well—

"Mr. Street: Well now, if the Court please, I think it is immaterial that the Doctor goes all over the State testifying in this type of case, I don't think it has any bearing on any injury that Mildred Rudsenske may have sustained. I think it is common knowledge among the Bar that the Doctor goes all over the State—

"Mr. Skaggs: Just a second, Mr. Street.

"Mr. Stiernberg: If he wants to testify, we will ask him to be put under the oath so he can be sent to the penitentiary—

"The Court: Oh, no, just a minute."

Whereupon the trial court instructed the jury not to consider the remarks of counsel and retired the jury. Then, in conference, appellee's counsel offered an apology to appellant's counsel and offered to make such apology in the presence of the jury. The court reprimanded appellee's counsel and offered to give the jury an additional written instruction, all of which appellant's counsel declined. Appellee's counsel assured the court that he had not completed his statement and had he done so he would have added other words, to the effect that counsel should be sworn and subjected to the penalty of perjury if he did not tell the truth, and the court so qualified the bill. While we do not subscribe to this type of conduct in the trial of cases, yet it is obvious that some such remark was provoked by the statement of appellant's counsel. Moreover, prior to that time, appellant's counsel had been guilty of making such statements of fact outside the record. This incident occurred early in a lengthy trial, and it is doubtful if the jury even remembered it at the time the case was submitted to them. We are of the opinion that any harmful effect from this incident was cured by the instruction given by the trial court.

Two other alleged incidents of misconduct are complained of. The first is, that one of appellant's counsel, in making a motion for mistrial, related to the court that another of appellant's counsel told him that during a recess he heard one of the jurors in the case make the statement: "I have heard of filibusters before, but this is the first time I have been ex-

posed to one." The record does not show to what the juror referred, and while the statement of facts consists of more than three thousand pages, it is not shown how that remark had any reference to appellant's counsel. Moreover, there is no proper bill of exception with reference thereto. Rule 372, T.R.C.P. The second incident complained of is that appellant's counsel in making another motion for a mistrial testified, after swearing had been waived, that he saw a juror during the trial make some kind of motion with his head and hand, which counsel took to mean that the juror was indicating he thought appellant's leading counsel was "crazy." The court reporter's Q and A record does not show that either of these two incidents occurred, and the trial court stated that he had no knowledge of the incidents. No bill of exception certified by the court, nor bystander's bill reflected such occurrences. Jury misconduct must be presented by bills of exception or other authentic means. 3–A Tex. Jur. 643; Rule 372, T.R.C.P.; Carr v. De Witt, Tex.Civ.App., 171 S.W.2d 388; McGee v. McGee, Tex.Civ.App., 237 S.W. 2d 778; Stein v. Boehme, Tex.Civ.App., 302 S.W.2d 663.

We have considered the record in this cause as a whole, and have reached the conclusion that these incidents, considered either singly or collectively, did not amount to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P.

By his fourth and fifth points, appellant complains that the court erred in failing to require Dr. Duncan and Dr. Childress, employers of Mrs. Mildred Rudsenske, and Fred P. Rudsenske, her husband to produce certain records in response to the subpoenas duces tecum timely issued by appellant, and in refusing appellant an unrestricted examination of the records of the employers of Mildred Rudsenske.

Doctors Duncan and Childress are partners in the medical profession in the City of Harlingen, Texas. Mildred Rudsenske is and has been employed by them as a registered nurse, office manager and bookkeeper in their office. In addition to Mildred they have several other employees. Fred P. Rudsenske is employed by or is a partner in a Ford agency in said city.

Prior to the trial, appellant caused subpoenas duces tecum to be issued to appellee, Fred P. Rudsenske, Dr. James Duncan, and Dr. James L. Childress, requiring them to produce in court the following records:

"Patient account records from June 6, 1956 to present;
Duplicate deposit slips for all funds, including cash payments;
Cash receipt books;
Operations schedule book;
Payroll records—1955, 1956, 1957;
Withholding tax record, 1955, 1956, 1957;
Income tax returns—1955 and 1956—personal and business, individual, partnership and corporate
Office appointment & operation & Payment records for all patients—1956 and 1957;
All employee attendance records;
All medical records and X-rays and employment data, including any and all reports or records of other doctors or sources of any nature of Mildred Rudsenske.
All check books and cancelled checks since June 6, 1956;
Complete records of any funds of any kind paid to Mildred Rusenske during her employment."

Apparently these records were all produced, but appellant's counsel were denied the right to make a private inspection and examination of them. It appears from the record that appellee's counsel offered to go over the records with appellant's counsel and sort out those which might be material. They also offered that the court might appoint some competent auditor to do so, but appellant's counsel refused these offers.

During numerous conferences between the court and counsel, covering more than 250 pages of the record, the court determined that certain records were material and others were not. Some of these records were introduced in evidence; others which were delivered to appellant's counsel were not. Appellant has pointed out no failure of appellee, Fred P. Rudsenske, to produce his records.

■ It is apparent that many of the records called for in the subpoenas contained information which is private and confidential between the doctors, who were not parties to this suit, and their various patients, and the trial court had the authority and owed the duty to protect these records from prying eyes of unauthorized persons. Moreover, it is not shown that the records have any relevancy. The most that appellant contends is that he was denied the privilege of searching through them in the hope that he might find something beneficial. We perceive no error in the trial court's action. See Rule 177a, T.R.C.P.

By his sixth point, appellant contends that the award of the jury of $25,000 for loss of Mildred Rudsenske's capacity to earn money in the future was and is excessive. By his seventh point, he contends that the award of the jury of $1,000 for the value of time lost by Mildred Rudsenske from performing her duties for her employers from the date of the accident to the date of trial was and is excessive. By his eighth point, he contends that the award of $5,000 for the physical pain and mental suffering of Mildred Rudsenske from the date of the accident to the date of the trial was and is excessive; and by his ninth point he contends that the award of $10,000 for future physical pain and mental suffering was and is excessive.

Mildred Rudsenske, wife of appellee, was forty-one years of age at the time of the collision and had a life expectancy of twenty-five to thirty years. She is a trained registered nurse, and has been married to appellee for seventeen years. Since 1951 she has been working for Doctors Duncan and Childress. At the time of the collision her salary was $400 per month and, notwithstanding the injury, they have continued to pay her the same salary.

On the occasion in question Mildred Rudsenske was driving her car on a street in the City of Harlingen. When she applied her brakes to stop for a traffic light, appellant, who was driving behind her, ran into and collided with the rear end of her car with such force and violence that the impact propelled her car "almost or completely across the intersection," as a result of which she sustained what is known as a severe "whiplash" injury.

The testimony relative to the injuries received by Mildred Rudsenske and her condition as the result thereof, is so voluminous in this record that it would be impossible without unduly lengthening this opinion to make a narrative statement thereof with any degree of completeness. Suffice it to say that nine medical experts testified, including two surgeons, one neurosurgeon, four orthopedic surgeons, one neuropsychiatrist, and one general practitioner, as well as several of her neighbors, friends and fellow employees. The testimony of the medical witnesses alone comprises more than 900 pages of this record.

The record in this case shows that Mrs. Rudsenske suffered injuries to her spinal column, particularly in the cervical spine, strain and laceration of ligaments and muscles in the region of the neck, which is sometimes called a concussion fracture; narrowing of the nerve root sleeves, that is, where the nerves leave the spinal column proceeding to the various portions of the body. That as a result of the injury to the cervical spine, her ability to bend her head and neck, either to the front or back or from side to side, or to turn her head from right to left, or from left to right, has been reduced to only a fraction of the normal ability to make such movements. Numerous X-rays were made and they showed a forward slipping of the bodies of two of the cervical vertebrae on the vertebrae

below; a calcification within the ligament in the neck; a widening of two joint spaces between the vertebrae; a questionable healed fracture of the odontoid process, a chipping of the bone pulled loose when a ligament is strained. The films taken showed not only a loss of the normal curve in the cervical spine, but an actual reversal of the curve. An examination showed atrophy or wasting of the muscles in the right side of the neck, enlarged or swollen joints in the neck at the back on the right side, weakness of the right grip, wasting of muscles in the right arm and forearm, and that her right arm is now three-fourths of an inch smaller than the left arm by actual measurement. That her reflexes in her right arm are hyperactive, which shows nerve compression or pressure on the spinal cord itself. That as a result of the injury to the spinal column and nerves her sense of balance and equilibrium has been impaired. That she has suffered and will suffer intense headache, nausea and vomiting and is nervous and excitable.

The record further shows that for two months after the injury she was required to remain in twenty-four hour traction with an upward pull on her head produced by a six-pound weight attached to the collar around her neck and under her chin, that thereafter the weight was increased to fifteen pounds; that at the time of the trial, some sixteen months after the accident, she was still required to have intermittent traction electrically operated, which pulls at intervals and releases at intervals. That at all times she is required to wear a neck brace as a support to prevent painful movement.

The record further shows that almost continuously since the accident she has been in intense and excruciating pain, and has been required to take sedatives and other medicine to somewhat alleviate the pain.

The record further shows that the condition from which she is suffering is in reasonable probability permanent, and that some of the conditions will worsen as time goes by, and that it is probable that she will not be able to continue in her present position and employment. Appellant's witness, Dr. Klecka, testified, "Oh, I think the injury is permanent to a degree, after having seen these last X-rays. Yes."

The record shows that while her employers have continued to pay her salary, she has been at the office only for short periods of time, and that all of her duties requiring physical effort have been taken over and performed by others. The record also shows that prior to her injury she performed most of her household duties.

The law is settled that before an appellate court will disturb a judgment rendered upon a jury verdict, on the grounds that such verdict is excessive, there must be circumstances tending to show that it was the result of passion, prejudice or other improper motive, or that the amount fixed was not the result of a deliberate and conscientious conviction in the minds of the jury and court, or so excessive as to shock a sense of justice in the minds of the appellate court. 13 Tex.Jur. 278, Damages, and authorities cited. The measure of damages in a personal injury case cannot be measured by a mathematical yardstick. Each case must be measured by its own facts and considerable discretion and latitude must necessarily be vested in the jury. Bee Line Coaches v. Folterman, Tex. Civ.App., 207 S.W.2d 986. And in determining whether or not a verdict is excessive, the evidence in support of the award must be viewed, of course, in the light most favorable to the award. Hill & Hill Truck Line v. Van Schoubroek, Tex. Civ.App., 233 S.W.2d 167; Texas Motor Coaches v. McKinney, Tex.Civ.App., 186 S.W.2d 714.

Here we have an injured employee who has lost her ability to perform her duties and thus to be in a position to hold her job. The fact that she did from time to time perform some duties was undoubtedly taken into consideration by the jury

in passing upon the issue of her past earning capacity, for the reason that they awarded the sum of $1,000 less than one-fifth of her earnings for the period at her present rate of pay. The fact that her employers, out of gratitude to a loyal and faithful employee, or for some other altruistic motive, paid her salary during the period of time is immaterial, so far as her right to recover is concerned. Missouri Pacific R. Co. v. Jarrard, 65 Tex. 560; Graves v. Poe, Tex.Civ.App., 118 S.W.2d 969.

As for loss of earning capacity in the future, the record shows a life expectancy of from twenty-five to thirty years, and calculating such loss on the basis of her past earning capacity, which the jury was authorized to do, and might well have done, even assuming she continued at the same salary, the figure of $1,000 or less per year is not excessive, especially in view of the fact that she may in all probability be forced to quit her job entirely, thus losing $4,800 per year. The award of $25,000 for loss of future earnings is amply justified by the record.

As for past and future pain and suffering, as we have outlined above, this injured lady has from the date of the accident to the trial suffered almost continual excruciating physical pain and great mental suffering, and that she will continue to do so in the future is a fact which the jury might rightfully infer from the evidence in this record.

Many decisions have been handed down by the Courts of this State, as well as other jurisdictions, passing upon the question of excessiveness of jury verdicts in personal injury cases, and many of them have been cited by both parties in their briefs, in this case. We do not feel that a lengthy citation or discussion of them is either necessary or appropriate, but following the rule as above set forth, we find nothing in this record to indicate that the jury was motivated by any passion, prejudice or other improper motive. On the contrary, the record demonstrates that Mildred Rudsenske's injuries, loss and suffering are entirely commensurate with the award of damages. Appellant's sixth, seventh, eighth, and ninth points are overruled.

Appellant's tenth point is without merit and is overruled.

By his eleventh point, appellant complains that the court erred in sustaining appellee's exception to that point of his pleading wherein he alleged prior negotiations between counsel with reference to the matter of a physical examination of the alleged injured person and that attorneys for appellees had agreed upon unreasonable conditions such as amounted to a refusal by them. We overrule this point. This was an evidentiary matter which might have been inquired about in questioning the injured party and did not raise any proper ultimate issue in the case and was properly stricken.

By his twelfth point, appellant complains that the court refused to permit him to submit evidence concerning the circumstances of the refusal of appellee's wife to submit to a medical examination. In that connection, appellant on several occasions while doctors were on the witness stand, attempted to interrogate them with reference to alleged unusual condition under which appellee's attorneys would agree to such an examination, and to get their opinion thereon, and also whether or not they would perform such an examination under such conditions. The record fails to show what their answers would have been. We agree with appellant that if Mildred Rudsenske refused at the time of trial, or prior thereto, to submit to a physical examination by some disinterested doctor, he was entitled to prove that fact. But, although Mildred Rudsenske and her husband both testified as witnesses in the case, appellant did not attempt to ask either of them if she had so refused, or if she would then submit to such examination, and although her deposition was taken long prior to the trial, there is no showing that such

request was made of her at that time. The case of Texas & N. O. R. Co. v. Rooks, Tex.Com.App., 292 S.W. 536, is squarely in point. Appellant's point is overruled.

By his thirteenth point, appellant contends the court erred in failing to grant his motion for a mistrial on account of injection of insurance into the case.

It appears that the witness Seaquist is an insurance agent and has his office at or near the place of the collision, and that he saw the collision from his office and went to the place after it occurred. He testified without objection by appellant that he was in the insurance business. He also testified without objection that he has no interest in this lawsuit and that neither he nor any of the companies he represents have any interest in it. Appellant's counsel, in making an objection as to the force of the collision, referred to the witness as a man who is in the insurance business. In response to a question by appellant's counsel, the witness Seaquist testified that he frequently checked that type of accident for fear one of the cars might be his insured. Also, appellee's witness Eileen Cooney, having testified that she and Mildred Rudsenske had attended a banquet, appellee's counsel asked her whether or not it was a Blue Cross banquet, to which she replied that it was.

 It is well settled that it is error to bring to the jury the information or impression that the defendant is protected by insurance. M. J. Construction Co., Inc., v. Deatherage, Tex.Civ.App., 231 S.W.2d 501. But in this case it is apparent that the witness Seaquist is in the insurance business, and the objectionable word was used by both parties, without any objection. There is no intimation or suggestion that the defendant is covered by insurance. We fail to see how the use of the term "Blue Cross" in connection with a banquet, wholly disconnected with the defendant or any relevant issue in the case, could be an intimation that the defendant is covered

by insurance. Appellant's thirteenth point is overruled.

 By appellant's fourteenth and fifteenth points he contends that the court erred in submitting the damage issues in not confining the jury to a consideration of damages proximately caused by the negligence of the defendant, and also that the court should have granted judgment non obstante veredicto in defendant's favor for lack of a finding by the jury that such damages were so proximately caused. These points are overruled.

. The court in each of the damage issues limited the jury to a consideration of only such damages as were sustained as a direct and proximate result of injuries sustained on the occasion in question. The charge as a whole limited the recovery to only damages as had a causal connection with the negligent acts found by the jury. After such a lengthy trial, it is difficult to see how the jury could have been confused regarding the "occasion in question." Scott v. Gardner, Tex.Civ.App., 159 S.W.2d 121, 123; Wichita Transit Co. v. Sanders, Tex. Civ.App., 214 S.W.2d 810; Melear v. Fairchild, Tex.Civ.App., 278 S.W.2d 280; St. Louis, Southwestern Ry. Co. of Texas v. Duffy, Tex.Civ.App., 308 S.W.2d 202.

 By his sixteenth point, appellant complains of the court's ruling in permitting counsel for appellee to use a blackboard in connection with his argument to the jury. There appears in the record what purports to be a blackboard. It has calculations thereon with reference to the amount of damages in connection with the damage issues. The argument of the counsel is not brought forward, and we have no way of knowing what was said about the figures, however, the court instructed the jury that the contents of the blackboard were not evidence, and that they were not to be considered by the jury as evidence. We see no error in this procedure. Texas Employers' Ins. Ass'n v. Cruz, Tex.Civ.App., 280 S.W.2d 388; Fort Worth

& D. C. Ry. Co. v. Gifford, Tex.Civ.App., 244 S.W.2d 848; Kimbell v. Noel, Tex.Civ. App., 228 S.W.2d 980; Magnolia Petroleum Co. v. Herman, Tex.Civ.App., 295 S.W.2d 430. Moreover, the figures shown on the blackboard total almost three times the total amount of damages awarded by the jury, thus indicating that the jury paid little, if any, attention to the blackboard. The record fails to show any probable injury to appellant. Rule 434, T.R.C.P.

No reversible error appearing, the judgment is affirmed.

W. O. MURRAY, C. J., disqualified and not participating.