Roy McGREGOR, Appellant,

v.

Aron S. GORDON, Appellee.

No. 11665.

Court of Civil Appeals of Texas.

Austin.

May 15, 1969.

Rehearing Denied June 18, 1969.

Pat Maloney, San Antonio, for appellant.

Paul M. Green, San Antonio, for appellee.

O'QUINN, Justice.

Roy McGregor, the appellant, brought this lawsuit to establish a constructive trust in his favor in about three sections of land located in Comal County which he claimed Aron S. Gordon, the appellee, had agreed to buy jointly with appellant but instead bought for himself to the exclusion of appellant.

Based on jury answers to special issues, the trial court on August 1, 1968, entered judgment that McGregor take nothing "of and from the defendant Aron S. Gordon." We affirm the judgment.

Appellant McGregor brings five points of error, all of which assert error related to the trial court's refusal to permit appellant's counsel to examine "the written notes and memoranda referred to by the witness, Paul Wise, and used by him in his testimony in the trial of this case." Because the points of error are all related, appellant has briefed and argued the points collectively.

Appellant McGregor, a resident of San Antonio, commenced this action to impose a constructive trust or in the alternative for damages growing out of fraud in connection with the real estate transaction. McGregor alleged an oral agreement with Appellee Gordon, who lived in Houston, under which working together each of them would acquire separate portions of a ranch in Comal County owned by Alton E. Robertson of San Antonio. Subsequent to the time of the alleged agreement, Gordon acquired all the ranch from Robertson. By a partial summary judgment, the action for damages by virtue of fraud resulted adversely to McGregor, and the lawsuit was tried on the theory of a constructive trust.

McGregor became interested in the Robertson ranch in January, 1966, and brought it to Gordon's attention in March of that year. McGregor testified that his agreement with Gordon was that they would buy the ranch, consisting of more than 1,800 acres, for $450,000; that McGregor would become obligated for $50,000 of the purchase price and would acquire as his separate property about 315 acres out of the southeast corner of the ranch; and that Gordon would be obligated for the balance of the purchase price and would own all of the ranch except the 315 acres. Gordon admitted negotiating with McGregor, but denied any agreement between them.

On April 12, 1966, McGregor testified, he went to Robertson's office "ready to close," but before he made an offer, Robertson told McGregor the ranch had been sold to a Houston group. On the evening of April 12, McGregor reported to Gordon by telephone that Robertson had sold the ranch. The following day, April 13, Gordon's attorney wrote McGregor advising him that Gordon was terminating negotiations with McGregor.

There was no further communication between McGregor and Gordon regarding the ranch until about a year later. During that year McGregor learned that Robertson had sold the ranch to Paul E. Wise, Trustee, who in turn had conveyed to A. S. Gordon, Trustee. Gordon contended at the trial that he questioned reliability of McGregor's report that the Robertson ranch had been sold and afterwards put Wise, a real estate dealer in Houston, to work in an effort to buy the land.

The "earnest money" contract between Robertson and Wise was dated April 22, 1966, and the deed to Wise as trustee was dated May 17, 1966. The deed to Gordon was dated May 26, 1966. McGregor sought to establish at the trial that Gordon had communicated with Robertson through Wise prior to April 12, the date McGregor called Gordon by telephone and told him that Robertson had sold to a Houston group. McGregor contended that Gordon's action was an effort to acquire the ranch for himself and leave McGregor out of the purchase.

The jury found that there was no agreement between McGregor and Gordon, and that Gordon and Wise did not conspire to deprive McGregor of an interest in the

ranch. The jury also found that whatever agreement McGregor and Gordon might have had was abandoned prior to April 22, when Wise made the initial agreement with Robertson to buy the ranch. There was also a finding by the jury that Gordon's discovery that the ranch had not been sold before April 12, as reported by McGregor, induced Gordon to believe that McGregor was not acting in good faith and led Gordon to employ Wise to acquire the ranch for Gordon.

Paul E. Wise was a witness who testified extensively at the trial regarding his connection with the transactions in April and May of 1966 by which Gordon acquired the Robertson ranch. Trial was held July 15, 1968, and the witness who gave his age as 71 years, frequently referred to a file of notes and memoranda to refresh his memory. Wise had brought to the courtroom in a briefcase his "official records" in connection with the Robertson " * * * transaction or any other information or negotiations pertaining to Comal County property * * *."

Efforts of McGregor's counsel to examine the notes and memoranda in the Wise file began in the manner disclosed by the interrogation we quote:

"Q Mr. Wise, I presume you are the same Mr. Wise that purchased the Robertson Ranch on May 17, 1966 in the name of Paul E. Wise, Trustee; is that correct?

A I am not sure about the correct date. That is a fact.

Q You are the same fellow?

A Yes, sir.

Q You had never seen Alton Robertson, the owner of that ranch, until what date?

A I would have to look at my schedule. I talked to Mr. Robertson a number of times. I didn't see him until probably ten days or two weeks after my first contact with him.

Q Do you have your schedule with you?

A Yes, sir, it is in the briefcase there.

Q Are those your official records in connection with this transaction?

A This transaction or any other information or negotiations pertaining to Comal County property, yes, sir.

Q When you get through may I see them?

A I don't know whether I want you looking through my file or not.

MR. MALONEY: Judge, may I see them?

THE COURT: If he is using them to refresh his memory you have a right to them.

MR. MALONEY: Thank you very much, Judge."

In the course of inquiries made immediately following this exchange, the witness Wise, with notes and records before him, from which he from time to time refreshed his memory, was able to testify to these events and dates:

(1) Gordon first called Wise about buying the Robertson ranch on April 12; (2) Wise first called Robertson by telephone on April 13; (3) Wise called Robertson four times on April 13, and once on April 20 and once on April 21; (4) an associate of Wise, Robert W. Pullen, went to San Antonio, met with Robertson and his attorney, and put up $25,000 earnest money on April 25; (5) Wise first met Robertson in person on May 24; (6) an exchange of letters between Pullen and Prudential Insurance Company, dated May 3, 5, and 9, disclosed the names of probable purchasers of the Robertson land and their respective interests; and (7) Gordon paid Wise an "acquisition fee" of $13,128.98 "within a day or two of May 26, 1966."

Wise was unable to testify as to the several dates on which Robertson called Wise

because he did not have with him records of such calls to refresh his memory.

Copies of the correspondence between Pullen and Prudential Insurance Company, which disclosed the parties assuming responsibility for a loan by which the purchase would be financed, were introduced into evidence by counsel for McGregor after being used by Wise to refresh his memory.

Upon concluding this examination of Wise, counsel for McGregor asked to see the entire files Wise had with him, and the trial court replied, "Let's wait." The witness Robertson then arrived and was placed on the witness stand out of order.

Following Robertson's testimony, a recess was called, during which the trial court segregated the material in the Wise file, delivered part of the material to McGregor's counsel, and placed the remainder in a sealed envelope. McGregor's counsel had caused to be issued and served on Wise a subpoena duces tecum. Subsequently counsel perfected a bill of exception to the action of the trial court in refusing McGregor's counsel access to Wise's entire file.

The subpoena duces tecum summoned the witness Wise "to testify and speak the truth on behalf of the Plaintiff" [McGregor] and commanded Wise to produce "all papers brought with you to the witness stand on July 16, 1968." The record shows that "Paul E. Wise [was] called as a witness for Plaintiff," and "after having been duly sworn" testified under "cross examination" by McGregor's counsel. The appellee, Gordon, states in his brief that Wise clearly was "adverse" to McGregor, and the right of examination on that basis was conceded at the trial.

At the time McGregor's counsel requested opportunity to inspect Wise's entire file, the testimony of the witness theretofore adduced related in the main to Wise's background, his relationship over some 38 years to Gordon, and his involvement in the sequence of events concerning the transaction in controversy. At no time during this part of the examination of Wise did the trial court deny McGregor's counsel inspection of the notes and memoranda used by Wise to refresh his recollection of the dates and events concerning which counsel questioned Wise.

The rule is stated by McCormick and Ray that:

"The writing which is used to refresh the recollection of the witness must on demand be shown to the opponent for his inspection and use on cross-examination so that he may have an opportunity to test the credibility of the witness and see if it could properly or does refresh his recollection." Texas Law of Evidence, McCormick and Ray, 2d ed., vol. 1, sec. 553.

Included in the cases cited in support of this statement of the rule are Green v. State, 53 Tex.Cr.R. 490, 110 S.W. 920, 22 L.R.A.,N.S., 706 (1908); Winters v. Winters, 282 S.W.2d 749 (Tex.Civ.App., Amarillo, 1955, no writ).

The right of inspection and use in cross examination of a memorandum or note does not arise unless the witness has actually used the writing to refresh his recollection. Chandler v. State, 60 Tex. Cr.R. 329, 131 S.W. 598 (1910); see also Green v. State, supra; Winters v. Winters, supra; and McCormick and Ray, supra.

The rule is stated in American Law Reports in this language:

"Before the opposing counsel or party is entitled to an inspection of memoranda or papers used by a witness for the purpose of refreshing his memory, it must appear that the witness is actually using the papers for that purpose, and further that such papers do tend to refresh his memory, *since no attorney could claim to be entitled to an inspection of every paper which a witness might have in his custody or even in his hand while giving testimony.*" (Empha-

sis added.) 82 A.L.R.2d 473, 570, Sec. 66.

■ The attempt by McGregor to gain access to Wise's entire file, regardless of whether used by Wise to refresh his memory while testifying, apparently was made pursuant to Rule 177a, Vernon's Ann. Rules of Civil Procedure, which authorizes issuance of a subpoena for production of documentary evidence. Under this Rule a subpoena to compel production of a document may be issued at any time during trial. Dobbins v. Gardner, 377 S.W.2d 665 (Tex.Civ.App., Houston, 1964, writ ref., n. r. e.).

In Dobbins v. Gardner the document "was in court in *possession of a party to the cause*" and the appellate court held "there was no necessity for the issuance of a subpoena." (Emphasis added.) Under such circumstances, "The court had no less power to order the letter to be given to counsel for inspection or for use as evidence." 377 S.W.2d 665, 667, col. 2.

The decision in Dobbins v. Gardner turned on whether the letter was admissible in evidence by reason of its privileged nature having been waived. The court held that in the absence of waiver the party having the letter "could not have been required to produce it under the provisions of Rule 167."

■ By his first point, McGregor urges that the trial court erred in not permitting McGregor's counsel "to examine the written notes and memoranda referred to by the witness, Paul Wise, and used by him in his testimony in the trial of this case." The record does not disclose that the trial court at any time denied McGregor's counsel examination of any paper referred to by the witness and used by him to refresh his recollection. The first-point is overruled.

By the second point, McGregor asserts that the trial court erred in refusing examination of the "notes used by the witness Wise in his testimony, even though the witness was duly served with a subpoena duces tecum to produce such notes." From our examination of the record, we find that the notes actually used by the witness in giving his testimony were not at any time denied to McGregor's counsel. The second point is overruled.

The third point of error McGregor brings is that the trial court "committed fundamental and reversible error in overruling appellant's objection, exception, and motion for mistrial, following the court's *exclusion of the evidence* and the court's refusal to permit the attorney for appellant to *examine the excluded evidence*." (Emphasis added.)

The fourth and fifth points are similar. McGregor urges error under these points that the trial court "erred in refusing appellant or his counsel the right to *examine the evidence* placed in a sealed envelope" (in connection with the bill of exception) and "in refusing the motion * * * for permission to *inspect exhibits* in sealed envelope" (being a motion made after judgment and in connection with motion for new trial). (Emphasis added.)

The last three points urge the right of appellant "to examine evidence." The evidence with which appellant is concerned consists of such "evidence" as might have been discovered in that portion of Wise's file which the trial court placed in a sealed envelope and refused to permit McGregor's counsel to examine.

McGregor argues that "The materiality of this evidence is not in point in this appeal * * * The plea of appellant was simply that his counsel be permitted to *examine* the instruments placed in the sealed envelope."

The position taken by McGregor on appeal is stated in this quotation from his brief:

"Naturally, [appellant] cannot argue about materiality, relevance, use in cross-examination or admissibility unless and until he sees what the judge and the

witness and appellee's attorney decided to place in the envelope. We are not concerned here with an improper ruling on admissibility of evidence, but rather, the *ex parte* ruling that the items were not for the plaintiff's eyes! Counsel for appellee argues that the evidence is 'privileged.' It is difficult for appellant to argue otherwise, when he hasn't even *seen* it, but he certainly has the right, under our adversary system, to review the material and make his own determination, and his objections and exceptions. Otherwise, he can never perfect adequate trial record for appeal."

We do not understand that "the witness and appellant's attorney," acting in concert with the trial court, "decided [what materials] to place in the envelope." The record shows that this decision was made by the court. Although the witness and the attorney were present when the trial court examined the Wise file, the court determined which materials were relevant and material to the cause and should be delivered to McGregor for his discovery and which materials were to be excluded from such discovery.

Appellee Gordon argues on appeal that "The papers contained in [the sealed envelope] all originated subsequent to the filing of this suit, at least one year after the operative events of the transaction occurred. It is illogical to argue that these writings were used in the refreshment process, and there is no showing to contradict the trial court's implied finding that they were not." Appellee further contends that "The segregated items are clearly part of defendant's 'work product' and immune from direct discovery * * * To permit their indirect discovery in the manner sought by opposing counsel would be to allow the fishing expedition the rules do not sanction."

■ The subpoena duces tecum, as we have observed, commanded Wise to produce "all papers brought * * * to the witness stand on July 16, 1968." Wise had earlier testified that he had in his briefcase

in the courtroom files containing records of the Robertson "* * * transaction, or any other information or negotiations pertaining to Comal County property." The Texas Rules of Civil Procedure do not require the party causing to be issued a subpoena duces tecum to show in detail by affidavit or otherwise, as required in some jurisdictions, exact descriptions of documents or their materiality to the issue involved in the case. Rules 177 and 177a, Vernon's Ann.Rules Civ.Proc. See Southern Pacific Co. v. Superior Court, 15 Cal. 2d 206, 100 P.2d 302, 130 A.L.R. 323 and annotations beginning at 327.

■ Rules 177a, 186a, and 186b became effective September 1, 1957, and Rule 202 was amended at the same time placing its operation in harmony with the subpoena rules. As stated in the general commentary, "Rule 177a is also a component part of the new deposition rules." Vernon's Ann.Rules Civ.Proc. Issuance of a subpoena duces tecum during the course of a civil trial is part of the discovery process, even though not employed, as in connection with depositions, in the pre-trial period. It should seem reasonable and logical, therefore, that the same safeguards afforded witnesses in pre-trial discovery would be extended to them when the discovery takes place during trial.

As pointed out in the commentary under Rule 186a, "The first proviso contained in the final sentence of Rule 186a is similar to the concluding portion of Rule 167 dealing with the discovery and production of documents and things, and is designed to prevent compulsory disclosure by deposition of written statements of witnesses and communications between a litigant and his employees and representatives, subsequent to the occurrence or transaction upon which the suit is based."

As a general principle, income tax returns, although not wholly privileged documents, are subject to discovery only to the extent of their relevancy and materiality which must be shown. Crane v. Tunks,

160 Tex. 182, 328 S.W.2d 434; Maresca v. Marks, 362 S.W.2d 299 (Tex.1962); Martin v. Jenkins, 381 S.W.2d 115, (Tex.Civ. App., Amarillo, 1964, writ ref., n. r. e., with opinion 384 S.W.2d 123, Tex.1964); Fort Worth Lloyds v. Hale, 405 S.W.2d 639, Tex.Civ.App., Amarillo, 1966, writ ref., n. r. e.).

In Crane v. Tunks the Supreme Court held that the trial judge abused his discretion in ordering inspection of a tax return "in its entirety, and without the judge inspecting the return so as to determine what portions were relevant and material to this cause." Quoting from the commentary under Rule 167 in which it is stated that "* * * where the documents contain information which the movant should not see, the order should in some way afford his adversary proper protection * * *," the Supreme Court declared:

"On failing to examine the income tax return and to separate the relevant and material parts from the irrelevant and immaterial parts the trial judge herein abused his discretion in ordering the income tax return to be delivered to respondent, Glenney's attorney, for inspection." 328 S.W.2d 434, 440, col. 2.

The Supreme Court again, in Neville v. Brewster, 163 Tex. 155, 352 S.W.2d 449 (1961), affirmed the rule of Crane v. Tunks "* * * where [the Court] held that in a discovery proceeding the trial court had the duty to examine the documents in question so as to ascertain what parts are material and relevant to the main cause and *to prevent the adversary from having access to information of a private nature that is not relevant or material to any issue in the case.*" (Emphasis added). In Neville v. Brewster it was held that the materiality of the records had not been properly presented to the trial court, but the Supreme Court did indicate that the rule with respect to income tax reports would in a proper case apply also to medical records, such as involved in that case.

In Alice National Bank v. Edwards, 408 S.W.2d 307 (Tex.Civ.App., Corpus Christi, 1966, no writ), documents relating to an estate in the possession of the bank were sought by subpoena duces tecum. The case was in the appellate court on application for mandamus to compel the probate judge to set aside an order overruling the bank's motion for certain protective orders under Rules 177a, 186a, and 186b. Because it was not shown that either the probate judge or the district court had been asked to examine and pass on relevancy of the documents, the case was remanded to the probate judge with instructions to follow the rule of Crane v. Tunks and Maresca v. Marks, 408 S.W.2d 312–313.

In Alice National Bank v. Edwards the appellate court stated, "We feel that the district judge had the authority to examine the papers, documents, etc., *had they been produced and properly identified before him in open court during the trial* without the instruments being disclosed to counsel for appellee." (Emphasis by that court.)

The Supreme Court pointed out in Maresca v. Marks that invasion of privacy in connection with income tax reports found no relief on appeal, for "* * * privacy once broken by the inspection and copying of income tax returns by an adversary cannot be retrieved." 362 S.W.2d 299, 301, col. 1. In Winters v. Winters, supra, relied on by appellant in this case, the appellate court observed that even with respect to notes and memoranda being used to refresh the memory of a witness there may be situations in which the writing "should not be examined by an adversary." 282 S.W.2d 749, 753, col. 1.

The procedure followed by the trial court in the present case, by which part of the Wise file was withheld from appellant's counsel and was placed in a sealed envelope, has been approved by Texas courts. This was suggested as a way to preserve the confidential nature of the data in Dobbins v. Gardner, supra, citing Crane v. Tunks, supra. In Alice National

Bank v. Edwards, supra, reference is made to "six sealed" envelopes. The trial court refused a request "that the data be sealed with the court papers" in Lehnhard v. Moore, 401 S.W.2d 232 (Tex.1966), and the Supreme Court held this was not abuse of discretion, since, for various reasons, the data subpoenaed were material and admissible in evidence.

■■ It is within the sound discretion of the trial court to protect parties and witnesses in the course of discovery processes. Fisher v. Continental Illinois National Bank and Trust Company, 424 S.W.2d 664 (Tex.Civ.App., Houston (14th Dist., 1968, writ ref. n. r. e.). The trial court in the exercise of this discretion will give appropriate protection from unreasonable and oppressive procedures, disclosure of communications had between parties and their agents subsequent to transactions upon which the suit is based, or from invasion of privacy or loss of secrecy surrounding privileged matters.

It has been held that an entire file of records may be kept from the party seeking the files by subpoena duces tecum where diligence in pre-trial discovery was not shown. Robertson v. Southwestern Bell Telephone Co., 403 S.W.2d 459 (Tex. Civ.App., Tyler, 1966, no writ). In that case the trial court sustained a plea in limine to keep the plaintiff from asking for records of defendant described in the subpoena and from commenting on their absence. The appellate court held that without a showing that the trial judge abused his discretion, his action must be sustained. 403 S.W.2d 470, col. 2.

A fact situation similar to the present case was presented in Green v. Rudsenske, 320 S.W.2d 228 (Tex.Civ.App., San Antonio, 1959, no writ), in which the appellate court sustained the action of the trial court in keeping selected portions of subpoenaed records "from the prying eyes of unauthorized persons." The records in question belonged to a witness, not a party to the suit, who produced the records in response to a subpoena duces tecum. The complaining party's counsel were denied the right to make private inspection and examination of the records.

The appellate court held that " * * * the trial court had the authority and owed the duty to protect these records from prying eyes of unauthorized persons. Moreover, it is not shown that the records had any relevancy. *The most that appellant contends is that he was denied the privilege of searching through them in the hope that he might find something beneficial.* We perceive no error in the trial court's action. See Rule 177a, T.R.C.P." (Emphasis added.)

In the case at bar, McGregor complains of the trial court's "* * * ruling that the items were not for plaintiff's eyes * * *" but insists that McGregor's counsel "* * * certainly has the right, under our adversary system, *to review the material and make his own determination * * *.*" (Emphasis added.)

The trial court in this case at all times permitted McGregor's counsel to examine and use the notes and memoranda the witness Wise actually referred to in refreshing his memory while testifying. After service of the subpoena duces tecum on Wise, the trial court delivered to McGregor's counsel what appears to be about half of the entire Wise file. Counsel used much of the material delivered to him in further cross examination and also introduced parts of it in evidence.

One exhibit introduced from the file was an office memorandum from Wise to his young associate, Bob Pullen, who was also Wise's son-in-law. The memorandum, among other things, advised Pullen, who soon thereafter went to San Antonio to make a contract with Robertson, how to conduct himself in dealing with Robertson. From the memorandum it is clear that Wise, who was an experienced real estate man, was concerned that no other agent have a rightful claim to a commission. Wise's agreement with Robertson was that

Robertson would cut the price of the land $15 an acre and would not pay a commission upon deeding the ranch to Wise. Wise looked to Gordon for his compensation, not to Robertson.

As it developed, Wise was paid a fee, less than the usual commission, by Gordon and also received a fee from Prudential Insurance for placing the loan with the company. It is difficult to discover the bearing this evidence had on the issue of constructive trust as between McGregor and Gordon, but the trial court permitted extensive examination of Wise from the memorandum. The entire record shows liberal leeway allowed McGregor's counsel, both in cross examination of Wise and in introduction of evidence from the Wise file.

We are unable to find that the trial court abused the discretion vested in him. McGregor does not contend that the material sealed in the envelope by the court was relevant or material, but that examination of the withheld material might have disclosed "additional prejudicial information * * * for use in cross-examination and otherwise * * *" and that he was denied its use "* * * because of the strange and groundless ruling of the trial court." (Emphasis added.)

█ The witness Wise produced the records subpoenaed by McGregor, although it is clear he did not wish the entire file to be made available to McGregor's counsel. The trial court, upon separating the file out of the presence of McGregor's counsel into two parts, delivered approximately half of the records to counsel and placed the other half in a "brown envelope" which was marked, "July 17, 1968, 3:55 p. m., correspondence and notes after suit filed, McGregor versus Gordon."

By this action the trial court properly exercised its discretion to withhold from McGregor written statements of the witness and communications subsequent to filing of the lawsuit which were of course also subsequent to the transactions upon which the suit was based. The points of error addressed to this action of the trial court are overruled.

Appellee Gordon urges one cross-point of error on appeal. It is to the effect that the trial court correctly entered judgment that McGregor "* * * take nothing because the undisputed testimony precluded relief by way of the constructive trust device, the only theory of recovery upon which the case proceeded to trial."

In view of our disposition of appellant's five points of error, which are overruled, and affirmation of the trial court's judgment, we do not reach appellee's cross-point.

The judgment of the trial court is in all things affirmed.

Affirmed.

HUGHES, Justice (concurring).

My concurrence in the affirmance of this case is based upon this statement in the opinion of Associate Justice O'Quinn, "The trial court in this case at all times permitted McGregor's counsel to examine and use the notes and memoranda the witness Wise actually referred to in refreshing his memory while testifying."

My concurrence is not to be construed as approving what the court has to say about the authority of the court to conduct in camera examination of proffered evidence to determine its relevancy, particularly in this case because the documents sought to be examined are not of a privileged nature.

In camera proceedings are destructive of the adversary system so essential to the administration of justice and the establishment of truth, a system of which we are justly proud. See address of Justice James Norvell before the Texas Bar Association in 1968 in Houston reported in July–August 1968 issue of Trial Lawyers Forum.

In camera proceedings to determine relevancy of evidence are not even tolerated in

cases where the national security is involved. Alderman v. United States, U. S. Supreme Court, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). They certainly should not be tolerated in this case.

For the record, I did not examine the contents of the sealed envelope.