TEXAS EMPLOYERS INSURANCE ASSO-
CIATION et al., Appellants,

v.

TEXAS COMPRESS COMPANY, Appellee.

No. 12910.

Court of Civil Appeals of Texas.

Galveston.

Dec. 1, 1955.

Rehearing Denied Dec. 22, 1955.

Royston & Rayzor and C. A. Brown, Galveston, for appellant Texas Employers' Insurance Association. Downman & Lott, Burch Downman, Houston, for appellant Willie Roberts.

Williams & Thornton, E. H. Thornton, Jr., Galveston, for appellee.

GANNON, Justice.

This is an appeal by plaintiff in a personal injury suit from an instructed verdict against him. A subrogated workmen's compensation carrier is also appellant.

Complaining that a box car from which he was preparing to unload compressed bales of cotton at destination had been so negligently loaded by the defendant shipper, Texas Compress Company, that a loose bale unexpectedly fell on and seriously injured him just after he had opened the door to the car, plaintiff sought judgment for his damages resulting from the accident.

Viewed most favorably from the standpoint of appellants, the facts are these: On or prior to December 31, 1947, Gulf, Colorado & Santa Fe Railway Company had switched two box cars to the premises of Texas Compress Company at Brownwood, Texas, where they were loaded with 103 and 100 bales, respectively, of compressed cotton by Texas Compress Company as shipper. The loading, closing and sealing of the cars was solely the function and responsibility of the Compress Company. After the loading was completed, the doors of the car were shut and seals applied, which made it impossible to gain access to the interior of the cars without breaking the seals.

With the cars so loaded, closed and sealed they were transported to Galveston, Texas,

a distance of 337 miles. The switching at Brownwood and the line haul were handled by G. C. & S. F. Ry. Co. At Galveston the cars were interchanged to the Texas & New Orleans Railroad Company as switching carrier. The latter switched and delivered the cars at the request of consignee to the premises of North American Compress & Warehouse Company on January 4, 1948, to be unloaded there by that concern.

Appellant Roberts was employed by North American Compress & Warehouse Company and it was his duty as such employee, along with his fellow workers, to open and unload such carloads of compressed cotton as those involved here.

In the early afternoon of January 6, 1948, appellant and a fellow worker named Scott went to the door of one of the subject cars as it stood on the premises of their employer. Appellant broke the seals on one of the doors. Those on both were previously unbroken and intact, indicating almost conclusively that no one had had access to the interior of the car since it was sealed by the Texas Compress Company after loading at Brownwood.

Upon breaking the seals appellant and his co-worker Scott, while standing on the ground, proceeded to push and pull, respectively, at opposite ends of the door and succeeded in opening it. No sooner was the door opened than appellant heard a shout of warning from still another fellow worker, the witness McClure, whereupon he looked up just in time to see a bale of compressed cotton tumbling out of the top of the space previously occupied by the door—but too late to avoid being struck and seriously injured by the heavy falling bale.

Plaintiff in his testimony describes the bale as having come from the top of two tiers of cotton in the car and as falling from an upright position rather than from the position the bale would have been in had it been lying flat on its side. The loose upright position of the cotton bale in the doorway of the car and the fact of its falling and striking appellant is corroborated by McClure. Both witnesses say the bale was neither braced nor tied nor wedged in any way to prevent it falling out as it did. Both of these witnesses testified that the ends—as distinguished from the sides—of bales of compressed cotton are uneven or lipped and that when placed in an upright position such bales tend to lean or topple over and that on that account will fall over from the force of gravity alone, even when placed on a flat surface, unless braced or tied so as to form into a tight wedge.

Both plaintiff Roberts and his co-worker McClure, who were the only witnesses, are shown to have participated for years in the unloading of innumerable carload shipments of baled cotton and both profess never before to have seen an unwedged or unbraced loose bale of cotton standing upright in the doorway area of a box car when the door of the car was opened preparatory to unloading. Roberts testified:

"Q. Willie, in the years that you have been working cotton bales, other than on this January 6th of 1948, did you ever see a loose bale standing end on end, at the doorway? A. No, sir."

McClure testified:

"Q. How would you have these bales that are right there at the doorway, when you opened the door? A. If you have enough of bales, you fit the bales in tight, so naturally the bales would be in there tight. If you don't have enough bales in there, you don't stand one up. You lay it down. * * *

"Q. Under this customary way, do you ever set loose bales up, end on end? A. I never load box cars. I unload them.

"Q. I mean, in unloading them, are they ever situated with the bale end on end, loose, right at the door? A. Well, I have never seen one like that. * * *

"Q. In other words, if a car is loaded with the bales tight, would there be any purpose in looking in? A. It would be impossible for anything to come out if loaded tight and correctly."

By other testimony it is shown that if there are not enough bales to be loaded in a single car so that all can be tightly wedged, or tied, the proper way to load any loose bales such as that which fell from the upper tier of bales on the occasion in question is on the flat side rather than upright.

Independently of the foregoing testimony it seems to us apparent that either by wedging or bracing or other practicable and feasible means baled cotton can and should be loaded into freight cars so as not to create an imminently lethal condition such as that described by plaintiff and his witness McClure. And we think all such loading should be done in the exercise of care to anticipate any and all reasonably foreseeable causes which might tend to create such imminently dangerous condition such as shifting and loosening of the load in the course of railroad transportation. Gonzales v. City of Galveston, 84 Tex. 3, 19 S.W. 284.

Nor does appellee deny that it was under a duty to plaintiff and others similarly situated to use ordinary care to properly load the cars so as to guard against accidental injury. On the other hand its position before this Court is that on a record such as the foregoing, which admittedly does not contain any affirmative evidence of "rough handling" by the carriers or others, there is no warrant in law for permitting a jury to say that the circumstantial evidence preponderates in favor of negligent loading practice as the proximate cause of the injuries sustained by plaintiff. In fact appellee maintains that appellant was under the burden of excluding the "possibility" of some cause of the accident other than negligent loading. Similar contentions have been often overruled in civil circumstantial evidence cases such as the present as requiring plaintiff to establish his case beyond a reasonable doubt rather than by a mere preponderance of the evidence. Burlington-Rock Island Railroad Co. v. Ellison, 140 Tex. 353, 167 S.W.2d 723, affirming Tex.Civ.App., 159 S.W.2d 569.

We do not hold that the foregoing facts and evidence, standing alone, require a finding of actionable negligence on the part of Texas Compress Company in loading the cotton. But we do hold that such facts and evidence constitute some and substantial circumstantial proof to permit a jury to find from a preponderance of the evidence that Texas Compress Company was negligent in loading the cotton and that such negligence was a proximate cause of the accidental injury sustained by Willie Roberts.

The appellant was under no duty to negative every other reasonable hypothesis except the actionable negligence of the defendant as the cause of his injury in order to go to the jury on that issue. His sole burden was to bring forward evidence, either direct or circumstantial, or both, from which a jury might reasonably infer defendant's negligence as the more probable cause of plaintiff's injury than some other but unproved cause not even suggested by the evidence as more than a possibility or speculative conjecture. That burden we hold plaintiff has fully discharged. See Bock v. Fellman Dry Goods Co., Tex.Civ.App., 173 S.W. 582, reversed Tex.Com.App., 212 S.W. 635; Merchant v. Houston Gas & Fuel Co., Tex.Civ.App., 78 S.W.2d 656 (writ dismissed, w. o. j.); Beaumont Iron Works Co. v. Martin, Tex. Civ.App., 190 S.W.2d 491 (writ refused, w. m.); and Henry v. Publix Theatres Corporation, Tex.Civ.App., 25 S.W.2d 695, writ refused.

The briefs of both parties contain considerable discussion of the doctrine of res ipsa loquitur. Under the pleadings rightly construed and the proved facts we do not consider this a res ipsa situation— rather it is the more ordinary type of circumstantial evidence case. See particularly Beaumont Iron Works Co. v. Martin, supra.

Reversed and remanded, Associate Justice Cody reserving judgment until motion for rehearing filed.