John T. ROBERTSON, Appellant,

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY et al., Appellees.**

No. 203.

Court of Civil Appeals of Texas.

Tyler.

May 12, 1966.

Jack K. Allen, Odom & Allen, Tyler, for appellant.

James H. Hand, Dallas, Jack W. Flock, Ramey, Brelsford, Flock & Devereux, Tyler, for appellee Southwestern Bell Telephone Co.

Jack W. Flock, Ramey, Brelsford, Flock & Devereux, Tyler, for appellee E. O. Doggett.

Spruiell, Lowry, Potter, Lasater & Guinn, Tyler, for appellee Homer Lee Tucker.

DUNAGAN, Chief Justice.

This is a damage suit for personal injuries instituted by appellant, John T. Robertson, in the 114th District Court of Smith County, Texas. Defendants below were Southwestern Bell Telephone Company, E. O. Doggett and Homer Lee Tucker. At the conclusion of plaintiff's evidence, defendant E. O. Doggett made his motion for instructed verdict, which was considered by the court and sustained.

Trial was before a jury at the conclusion of which the trial court submitted nine Special Issues. In response to the issues submitted, the jury made the following findings:

(a) That Homer Lee Tucker caused the telephone line to break by striking the line with the cattle truck he was driving;

(b) That such conduct was not the sole proximate cause of plaintiff's car striking the line on the highway;

(c) That Homer Lee Tucker did not fail to keep a proper lookout;

(d) That Southwestern Bell Telephone Company was not negligent in maintaining the line at the height it was so maintained; and

(e) That the occurrence was the result of an unavoidable accident.

Upon return of the jury's verdict, all defendants made their motions for judgment and the court entered judgment that John T. Robertson take nothing. From this judgment, appellant now appeals.

For convenience, the appellees will be referred to hereafter as "Southwestern," "Doggett," and "Tucker."

This cause was instituted by appellant against appellee Southwestern on December 3, 1962. Actionable negligence of Southwestern was alleged in permitting one of its telephone wires to "fall" at the intersection of State Highway No. 271 and the Old Jamestown Road located about 15 miles from the City of Tyler. Appellant alleged that he was riding as a passenger in his automobile and was driving in a southerly direction toward the City of Tyler when the telephone wire "fell" as his automobile was passing through the intersection aforesaid. Appellant further alleged that the wire caught on the rear bumper of the vehicle and in some manner jerked the vehicle, causing the alleged injuries to appellant.

On January 10, 1964, appellant filed his second amended original petition wherein he made additional parties defendant appellee Doggett, appellee Tucker, and Mrs. Ralph Mauldin. Subsequently, on February 15, 1965, Mrs. Mauldin was dropped from the suit, and on May 28, 1965, appellant filed his fourth amended original petition upon which he went to trial.

A brief summary of appellant's pleadings follows. He alleged that Southwestern, on August 15, 1962, was maintaining a telephone line along the Old Jamestown Road near its intersection with State Highway No. 271, which line furnished service to a farm house located about 1200 feet from said intersection and belonging to appellee Doggett.

According to appellant's allegation, appellee Doggett had employed Ralph Mauldin Trucking Company to come upon his farm and haul some cattle for him and, pursuant to instructions from his employer (Mauldin), appellee Tucker drove the cattle truck into the Doggett farm. In order to get the truck into the Doggett property, it was necessary for appellee Tucker to drive it under the telephone lines owned and maintained by Southwestern. Appellant alleged that just prior to the time the line fell across the highway at the intersection to which reference has been made hereinabove, appellee Tucker drove his cattle truck under the line striking and breaking the same and causing said telephone line to be pulled down for a distance of approximately 1200 feet and to fall upon the automobile in which appellant was riding.

Appellant alleged numerous acts of negligence against Southwestern relating to the manner in which its telephone line was maintained; he alleged two acts of negligence against appellee Doggett in permitting a hump of dirt to remain in the driveway used by Tucker; and he alleged four acts of negligence against appellee Tucker relating to the latter's conduct in driving the cattle truck under and breaking South-

western's telephone line. None of the allegations of appellant were made in the alternative. He alleged that his injuries resulted from a combination of all negligent acts of the three tort feasors.

Appellant first contends by his Point of Error No. 1 that "The trial court erred in refusing to allow Plaintiff to plead, either by his Supplemental Petition to his Fourth Amended Original Petition, or by a trial amendment, the theory of 'Res Ipsa Loquitur' and in denying Plaintiff's requested special issues on 'Res Ipsa Loquitur.'"

There was no dispute between appellant and appellees Southwestern and Doggett with reference to the cause of Southwestern's line being pulled down on the occasion in question. Appellant requested the submission of an issue to the jury and obtained favorable findings thereon that Tucker caused the telephone line of Southwestern to break by striking it with the truck which he was driving into the Doggett farm. None of the appellees were acting in concert; there was no connection between Southwestern and Tucker; and there was no evidence that Southwestern had any knowledge that Tucker was driving the truck into the Doggett farm on the occasion in question. The only relationship between Southwestern and Doggett was that Southwestern furnished the Doggett farm with telephone service. The cause of Southwestern's line falling or being pulled down was known to appellant as early as October 8, 1963, when he filed his first amended original petition. Appellant's counsel also knew from records in his possession that Southwestern reported on August 15, 1962, that its line was pulled down by a truck belonging to Mauldin.

On May 28, 1965, the date of filing of appellant's fourth amended original petition, he made no contention that he did not know the cause of the accident and in said amended petition he made no mention of relying upon the doctrine of res ipsa loquitur. On May 31, 1965, appellant filed his supplemental petition to plaintiff's fourth amended original petition wherein he, for the first time, attempted to allege that Southwestern had sole control of the telephone wire and that the doctrine of "res ipsa loquitur" was applicable; but such allegations were not made in the alternative and appellant did not to any extent abandon the allegations contained in his fourth amended original petition. Southwestern, on June 7, 1965, the day the case proceeded to trial, moved to strike that portion of appellant's supplemental petition wherein he attempted to allege res ipsa loquitur. Such motion was, by the trial court, granted. During the trial of the case, appellant never receded from his position that Tucker's cattle truck struck and pulled down Southwestern's telephone line. Appellant's counsel produced proof thereof during the trial of the case. The jury found that the cattle truck of Tucker's had in fact struck and pulled down the line belonging to Southwestern.

The appellee Southwestern contends that the doctrine of "res ipsa loquitur" was not applicable in this case. Under the doctrine, where it is shown that the defendant exclusively *controlled* the instrumentality which produced the injury, and, in the ordinary course of events, injury does not occur absent negligence, the occurrence of the injury itself may warrant an inference of negligence. However, Texas cases require the following elements to be present in any case wherein "res ipsa loquitur" is relied upon: (1) the injury must be of a kind which ordinarily does not occur if due care has been exercised; (2) The injury must be caused by instrumentality under the control of the defendant; (3) The injured person must be free of any reasonable contributing conduct; and a number of Texas decisions purport to require a further element, namely, (4) Evidence to explain the occurrence must be more readily accessible to the defendant than to the plaintiff. International Creosoting & Construction Co. v. Daniel, 114 S.W.2d 393 (Tex.Civ.App.), 1938, err. dism.; Alley v. Texas Electric Service Co., 134 S.W.2d 762 (Tex.Civ. App.), 1939, n. w. h.; Carothers v. Olshan, 198 S.W.2d 941 (Tex.Civ.App.), 1947, err.

ref., n. r. e. Where all of the elements are present, the fact of the occurrence may warrant an inference of negligence, but does not compel it. The presumption arising from the happening is a rebuttable one. Where the plaintiff has established a prima facie case of negligence by virtue of the doctrine of res ipsa loquitur, it is encumbent upon the defendant to introduce evidence to explain, rebut or otherwise overcome the presumption or inference that the injury complained of was due to negligence. Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659. The doctrine is merely a rule of evidence and if all of the elements necessary to invoke the doctrine are present, an inference may arise against the defendant. But if the defendant comes forward and explains the cause of the occurrence, or offers some evidence to exonerate itself from negligence, the inference or presumption vanishes and plaintiff then is put to the task of alleging and proving actionable negligence against the defendant. Wichita Falls Traction Co. v. Elliott, supra; Sims v. Dallas Ry. & Terminal Co., 135 S.W.2d 142, (Tex.Civ.App.) 1939, n. w. h.

■ In the case at bar, the doctrine cannot be applied *because appellee Southwestern was not in exclusive control of the instrumentality causing the injury*. It was established by appellant himself that the instrumentality (the telephone line) was caused to fall when it was struck by a cattle truck operated by an outsider—Tucker. The law is well settled in Texas that where the evidence shows that an accident may have happened as the result of one or two or more causes, and it is not more reasonably probable that it was due to the negligence of the defendant than to any other cause, the doctrine of "res ipsa loquitur" does not apply. Benkendorfer v. Garrett, 143 S.W.2d 1020, (Tex.Civ.App.) 1940, err. dism., judg. corr.

In the case of Davis v. Castile, 257 S.W. 870, (Tex.Com.App.) 1924, it is stated as follows:

"Again, where the evidence shows that the accident may have happened as the result of two or more causes, and it is not more reasonably probable that it was due to the negligence of the defendant than to any other cause, the rule of res ipsa loquitur does not apply. * * *"

To the same effect see Montgomery-Ward & Co., Inc. v. Sewell, 205 F.2d 463, (5th Cir., 1953) (a Texas case); Worth Steel Corporation v. Gartman, 361 S.W.2d 426, (Tex.Civ.App.) 1962, writ ref., n. r. e.

■ The doctrine of res ipsa loquitur is never applicable where the evidence shows that the instrumentality has been meddled with by third persons. Johnson v. Texas & Pac. Ry. Co., 117 S.W.2d 864, (Tex.Civ. App.) 1938, err. dism. At page 866 of the last cited case, the court states in part as follows:

"The rule of law applicable to such a state of facts is stated by our Supreme Court in Davis v. Castile, 257 S.W. 870, as follows (page 872):

" '* * * where the evidence shows that the accident may have happened as the result of two or more causes, and it is not more reasonably probable that it was due to the negligence of the defendant than to any other cause, the rule of res ipsa loquitur does not apply. * *' "

In Bonner v. Texas Co., 89 F.2d 291, (5th Cir., 1937) (a Texas case) the court states that the doctrine of res ipsa loquitur applies only when instrumentalities causing injury are shown to have been wholly in the care of the defendant and not to have been meddled with by the person injured or outsiders. See also Texas Employers Insurance Association v. Texas Compress Company, 284 S.W.2d 922, (Tex.Civ.App.) 1955, err. ref., n. r. e.; and Blassingame v. Halliburton Oil Well Cementing Company, 317 S.W.2d 111, (Tex.Civ.App.) 1958, n. w. h., wherein numerous Texas cases on this principle are collated; and Jones v. Nafco Oil & Gas, Inc., 380 S.W.2d 570, 575, (S.Ct.) 1964.

It is further held in Texas that where the plaintiff knows how an accident occurs, he is not entitled to rely upon the doctrine of res ipsa loquitur. Southland Industries, Inc. v. O. R. Mitchell Motors, 244 S.W.2d 528, (Tex.Civ.App.) 1951, err. ref., n. r. e. The Southland Industries case is directly in point with the situation now before this court in the instant case.

We sustain the action of the trial court below in the instant case in striking appellant's plea of res ipsa loquitur. The appellant had known for many months the exact cause of Southwestern's line falling upon the highway. Appellant not only plead the exact cause, but also offered proof in support thereof and obtained a favorable jury finding to the effect that Southwestern's· line was struck and pulled down by the cattle truck operated by Tucker. Since appellant knew the cause of the telephone line falling upon the highway, there ·was no need for him to resort to res ipsa loquitur. Moreover, by appellant's own conclusive evidence, Southwestern was not in exclusive control of the instrumentality causing the accident and, therefore, under no circumstances could the doctrine of res ipsa loquitur be made applicable to the situation before this court. Ordinarily, when applicable, the doctrine is invoked by a plaintiff in order to prevent having an instructed verdict rendered against him. In the case at bar, the trial court submitted the case to the jury and, as against Southwestern, submitted the only issue as to negligence raised by the evidence. Clearly, appellant was not entitled to rely upon the doctrine of res ipsa loquitur under the facts of this case.

A strikingly similar case on the facts appears in Lexington Telephone Co., Inc. v. Hurt, 311 Ky. 417, 224 S.W.2d 456, (1949). In the cited case, the plaintiff was driving an automobile upon a highway in Kentucky when it was involved in a collision with a vehicle operated by a Mr. Cantrell. The impact precipitated plaintiff's vehicle off of the highway and into a telephone pole owned by the Lexington Telephone Company. Following the accident, it was discovered that a telephone line hung down across the highway and only about two or three feet above it. It was plaintiff's theory that the wire was down prior to the accident; that the car driven by Mr. Cantrell ran into the wire and the contact jerked his automobile over in front of plaintiff. As against the telephone company, the plaintiff attempted to rely upon the doctrine of res ipsa loquitur upon substantially the same reasoning as employed by appellant in the case at bar. The court held that where the acts of a third party are involved and where there is no positive proof concerning the position of the wire prior to the accident, the doctrine of res ipsa loquitur does not apply.

Even if it could be said that the doctrine of res ipsa loquitur was applicable in this case, the same would do no more than permit an inference of negligence against Southwestern. The burden of going forward with the evidence would admittedly then be shifted to Southwestern but when it offers proof as to the good condition of the telephone lines and proof that it had not failed to use ordinary care in the maintenance of the line, the inference vanishes and appellant is thereupon put to the task of establishing by a preponderance of the evidence actionable negligence in one or more particulars. Wichita Falls Traction Co. v. Elliott, supra; Washington v. Missouri, K. & T. Ry. Co. of Texas, 90 Tex. 314, 38 S.W. 764; and Gulf, C. & S. F. Ry. Co. v. Dunman, 27 S.W.2d 116, (Tex.Com.App.) 1930, 72 A.L. R. 90. ·

The evidence from Southwestern's superintendent, Shoemaker, was ample to rebut any inference of negligence. He explained why the line fell, and therefore any inference arising from the doctrine vanished, thereby relegating appellant to the burden of establishing actionable negligence by a preponderance of the evidence.

■ The action of the trial court in refusing appellant's trial amendment is further sustainable on other grounds. This cause, as hereinabove stated, has been pending since December 3, 1962. Appellant had known since October 8, 1963, when he filed his first amended original petition, the cause of the accident. He procured the oral deposition of Southwestern's witness Shoemaker over a year prior to announcing ready for trial. He had announced ready for trial on other occasions prior to June 7, 1965, when this cause proceeded to trial. He had shown no diligence in the matter of amending his pleadings. He has not shown that the action of the trial court in refusing the amendment was an abuse of its discretion. He has shown no harm from the refusal of the trial amendment because, as is hereinabove clearly shown, this is not a case of res ipsa loquitur. Further, when the trial court refused his trial amendment, he made no motion to withdraw his announcement of ready. No error has been shown.

■ As stated in Coffey v. Fort Worth & Denver Railway Company, 285 S.W.2d 453, at page 458, (Tex.Civ.App.) 1955, no writ history:

"* * * Ordinarily the allowance of a trial amendment is within the sound discretion of the court. The court's ruling thereon is presumed to be correct and is subject to review only on a showing of abuse of discretion. A court does not abuse its discretion in denying permission to file a trial amendment when the record shows lack of diligence and that it would probably prejudice the opposite party in maintaining its defense. Westinghouse Elec. Corp. v. Pierce [153] Tex. [527,], 271 S.W.2d 422, 424. The trial court is not ordinarily required to permit amendments that would disrupt the orderly procedure and lead to interminable delay. A party whose pleading is held defective is entitled to amend his pleadings for the purpose of curing that defect, notwithstanding his previous announcement of ready, but 'this only extends to curing by amendment his defective pleading previously filed and does not authorize him as a matter of right to plead new and independent matters * * * (and) this court will not review its action in rejecting a proffered amendment of this character unless it clearly appears that wrong or injustice has been done thereby.' * * *"

See also Alcazar v. Southwestern Bell Telephone Company, 353 S.W.2d 933, (Tex. Civ.App.) 1962, n. w. h., and Thomas v. Jester, 325 S.W.2d 953, (Tex.Civ.App.) 1959, n. w. h.

Appellant next contends by his Point of Error No. 2 that "The trial court erred in refusing plea number three and four of Plaintiff's Plea in Limine, which referred to Plaintiff's being placed in class 4–F during World War II, and to Plaintiff's being treated for any kind of venereal diseases because the same had no connection with the cause of action upon which he sued."

Prior to trial, appellant filed his motion in limine seeking an order of the trial court instructing appellees' counsel to desist from mentioning at any time the following matters: (1) That appellant was involved in a shooting difficulty approximately twenty years previous; (2) That appellant was charged with D.W.I. and various other misdemeanors relating to "bootlegging" or the sale of untaxed whiskey; (3) That the appellant was rejected as 4–F by the Army during World War II because of "bad blood;" and (4) That appellant was treated for any kind of venereal disease. The trial court sustained the motion as to the first two items, but overruled the same as to items (3) and (4). However, no evidence was offered at any time to show that appellant was classified as 4–F by the Army although counsel did ask Bertha Johnson, appellant's mother-in-law, whether she knew that appellant had been rejected because of such classification, and she replied that she did not know this to be true. No objection was made by appellant to such question propounded to Bertha Johnson.

With reference to whether appellant had been treated for "bad blood," or a venereal disease, appellant himself admitted he had been afflicted with syphilis and had been taking shots therefor from the County Health Officer. Again no objection was made by appellant to such questions, although appellant's counsel conditionally stated that he would object unless the matter was tied in with the injury made the basis of the suit. Appellant's own physician, Dr. Theodore Taliaferro, had treated him from August 15, 1962, the date of the accident, until May, 1963, and appellant had muscle spasm in his neck and also had neuritis. Appellant admitted that he had trouble with his legs prior to the accident. Dr. Taliaferro further testified that he had examined appellant for syphilis at the time of the examination. However, Dr. Taliaferro admitted on cross-examination that if a person has latent syphilis over a long period of time, it can affect his general health and various parts of his body and account for some of his complaints. According to the physician, latent syphilis may affect a person's walking, his nerves, or almost any part of his body. Appellant further had testified that he was in "good health" prior to the accident, but that all of his complaints emanated from the accident made the basis of the suit.

We do not believe appellant's Point of Error No. 2 reflects any error and is therefore without merit for the following reasons:

(1) No evidence as to appellant's 4-F Army classification was ever offered and none is in the record.

(2) Appellant admitted his syphilitic affliction, and in view of his own testimony, there could be nothing more material than bringing out before the jury the possible causes of any physical complaints of appellant. Appellees had denied vigorously that appellant had received any injury as a result of his automobile striking the telephone line of appellee Southwestern. It was within the permissible bounds of cross-examination—not only of appellant, but also of his medical witness—to explore other reasons and causes for appellant's complaints. This matter went to his claimed disability and could very well explain his "neuritis," the trouble he had with his legs, and his "tired" feeling. Jones v. St. John, 178 S.W.2d 181, (Tex.Civ.App.) 1944, n. w. h. Nothing could be more relevant than the disclosure of other diseases and afflictions of appellant in this type case. It is universally held that a claimant may be fully cross-examined as to previous injuries, physical conditions, claims and actions for the purpose of showing that his present physical condition is not the result of the injury presently sued for, but was caused in whole or in part by an earlier or subsequent injury or a pre-existing condition. See 69 A.L.R.2d 594; Niles v. Steiden Stores, Inc., 301 Ky. 80, 190 S.W.2d 876; Griggs v. Saginaw & F. Ry. Co., 196 Mich. 258, 162 N.W. 960; Miller v. City of New York, (1955) 286 App.Div. 1033, 145 N.Y.S.2d 295; Chicago City R. R. Co. v. Canevin, 72 Ill.App. 81; Fahey v. Clark, 125 Conn. 44, 3 A.2d 313, 120 A.L.R. 517; and Hambrice v. F. W. Woolworth Company, 290 F.2d 557, (C.C.A. 5th).

(3) The matter as to whether appellant had been treated for syphilis or whether he then had a condition of latent syphilis went to the matter of his *disability*, if any, or the damages, if any, to which appellant was entitled and, inasmuch as all issues of liability were answered favorably to appellees, any error—and in our opinion there is none—is harmless within Rule 434, Texas Rules of Civil Procedure.

(4) The overruling by the trial court of items (3) and (4) of appellant's motion in limine cannot be error under the recent Supreme Court case of Hartford Accident and Indemnity Company v. McCardell, (1963), 369 S.W.2d 331, in which the Supreme Court held that the overruling of a motion in limine is never reversible error. If a motion in limine is overruled,

a judgment will not be reversed unless the questions or evidence were in fact asked or offered. If they were, in fact, asked or offered, *an objection made at that time* is necessary to preserve the right to complain on appeal that such questions asked or such evidence tendered were so prejudicial that the mere asking or tendering should require reversal. As pointed out hereinabove, no evidence of the 4–F classification was offered and as to appellant's history of venereal disease, the same was highly relevant to the issues in the case, but even if this were not so, appellant did not properly preserve the error by objection to the interrogation to appellant on this matter. In any event, the matters of which complaint is made are not so prejudicial as to have caused the rendition of an improper judgment in this case. Rule 434, T.R.C.P.

Appellant also contends by his Point of Error No. 3 that "The trial court erred in sustaining Defendant's Plea in Limine to keep Plaintiff from asking for Southwestern Bell Telephone Company's records or from commenting on their absence, which records were necessary for Plaintiff's prosecution of his case."

As above stated, this cause was instituted by appellant on December 3, 1962, and prior to actual trial, the case had been set for trial nine times. On February 22, 1965, all parties announced ready for trial, but the case was not reached during that week. On June 7, 1965, at the call of the docket of the trial court for that week, all parties again announced ready and the actual selection of the jury commenced on Tuesday, June 8, 1965. Although the case had been pending for over two years and although numerous depositions had been taken, on Monday, June 7, 1965, at 8:40 a. m., appellant's counsel procured the service of a subpoena duces tecum upon a representative of Southwestern. At 10:00 o'clock a. m. on the same Monday upon announcing ready for trial, Southwestern's counsel moved the court to quash the subpoena duces tecum on the grounds that it would be a human impossibility for Southwestern

to procure the records requested therein during the trial. Southwestern's counsel orally advised the court that representatives of Southwestern would bring the court any and all records called for in such subpoena duces tecum, which records, if any, were in its offices in the City of Tyler, Texas, but that it would be impossible for Southwestern to procure or make a search for the vast quantity of records described or referred to in the subpoena. The following morning, all records of Southwestern pertaining to the matters sought in the subpoena were obtained from the Tyler office and given to appellant's counsel. These constituted all the records of Southwestern which could be obtained from the Tyler office. Southwestern contended in the trial court and now contends in this court that its representatives did not have an opportunity to contact any of Southwestern's offices in Dallas or St. Louis for the purpose of ascertaining whether the company had any of the records described in the subpoena. The records which were furnished were plats and field prints showing the location where the accident occurred, the poles in place, the date the poles were replaced, the types of poles, the distances between the poles, and all other relevant information in connection with the maintenance of Southwestern's lines at the scene of the accident. At no time prior to Monday, June 7, 1965, did appellant's counsel ever request any record or memorandum of any kind relating to any of the matters described in the subpoena duces tecum. The only object which appellant's counsel ever requested that Southwestern produce consisted of a bracket of the type used at the scene of the accident. This was, in fact, furnished appellant's counsel many months prior to trial and the same was placed into evidence upon the trial of the case. Moreover, every witness of Southwestern requested by appellant's counsel for deposition was promptly furnished and appellant's counsel did procure depositions in this case. There is no showing that the records and memorandum called for in the subpoena duces tecum are even in existence. Upon a

hearing of the oral motion made to the trial court, Southwestern was relieved of the obligation to comply with the subpoena except as to the records available in the Tyler office and which were easily available and could be procured and furnished by the following morning. Appellant's counsel at no time following the court's ruling on the subpoena duces tecum moved for a withdrawal of its announcement of ready, but proceeded to trial the following morning.

Rule 177a of the Texas Rules of Civil Procedure provides for the production of documentary evidence by subpoena. By the very terms of the rule, upon motion made seasonably at or before the time specified in the subpoena for compliance therewith, the court is given the power to:

(1) Quash or modify the subpoena if it is unreasonable and oppressive, or

(2) Conditional denial of the motion to quash or modify upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the documents requested. Since the trial court excused Southwestern from compliance with the subpoena duces tecum, it evidently realized that it would have been a human impossibility for Southwestern or any other litigant to have procured the voluminous records called for in the subpoena duces tecum. In our opinion appellant had shown no diligence either in requesting or procuring the documentary evidence in this case. The rule itself contemplates that a party served with a subpoena duces tecum be given a reasonable time within which to comply with the same. Otherwise, the subpoena becomes oppressive and the trial court not only had the right, but was under the duty to see that no party suffered under the circumstances by such action on the part of appellant's counsel.

Although cited by appellant in his brief, the case of Parlin & Orendorff Co. v. Miller, 25 Tex.Civ.App. 190, 60 S.W. 881, 1901, writ refused, we think, supports Southwestern's contentions in this regard.

In the cited case, the plaintiff had been served with a subpoena duces tecum to bring certain books with him after he arrived in Gonzales to attend the trial. The court said:

"* * * The nineteenth assignment complains of the refusal of this charge: 'It devolves upon the plaintiff to prove the existence of his debt at the time of the execution of the mortgage, and it is the duty of the plaintiff, in obedience to the subpoena duces tecum served on him, to produce his books of account in which he has testified that all the items constituting his debt against the defendant O. B. Robertson are kept; and his failure and refusal to produce said books in obedience to said subpoena must be accepted by the jury as proof that the said books of account, if furnished, would be adverse to the interest of the plaintiff.' Plaintiff testified, in explanation of his not having with him the books, among other things to the fact that he lived at Waelder, 18 miles away, and was served with the subpoena after leaving there, and while at Gonzales attending this trial, and apparently not under circumstances which enabled him to have the books with him. * * *"

The court held that the trial court properly refused an instruction upon plaintiff's failure and refusal to produce his books of account in obedience to the subpeona duces tecum.

It is not indicated in the case last above cited how long the same has been pending prior to the issuance of the subpoena, but in the case at bar, it seems to us that by waiting over two and one-half years and after having announced ready for trial on several occasions, appellant has not shown diligence in procuring the records described in the subpoena. In any event, the matter rests with the discretion of the trial court and in the absence of showing an abuse thereof, the action of the trial court in this matter should be in all things sustained.

The appellant further contends by his Point of Error No. 4 that "The trial court erred in sustaining Defendant, E. O. Doggett's Motion for Instructed Verdict, because from the evidence, the Jury could have found that he was negligent and that such negligence was a proximate cause of Plaintiff's injuries."

In determining the correctness of the trial court's action in this regard, we must determine whether there was sufficient evidence of probative force to raise a fact issue on a material question. Sullivan v. Airhart, 336 S.W.2d 776, (Tex.Civ.App.) 1960, n. w. h.; Air Conditioning, Inc. v. Harrison-Wilson-Pearson, (1952), 151 Tex. 635, 253 S.W.2d 422. In considering such motion, the evidence must be considered most favorable in behalf of the party against whom the instruction is sought. White v. White, (1943), 141 Tex. 328, 172 S.W.2d 295; Stevens v. Karr, (1930), 119 Tex. 479, 33 S.W.2d 725. This is the rule though the evidence may be legally insufficient to support a verdict. Wallace v. Southern Cotton-Oil Co., 91 Tex. 18, 40 S. W. 399; Maryland Casualty Co. v. Morua, 180 S.W.2d 194, (Tex.Civ.App.) 1944, err. ref.; Great Atlantic & Pacific Tea Company v. Giles, 354 S.W.2d 410, (Tex.Civ. App.) 1962, err. ref., n. r. e. A peremptory instruction should not be granted if the evidence raises any material issue and such an instruction is warranted only when the evidence is such that no other verdict could have been rendered. Stevens v. Karr, supra. See also Stuckey v. Union Mortgage & Investment Company, Inc., 383 S.W.2d 429, (Tyler Court of Civil Appeals) 1964, writ refused, n. r. e.; and Jones v. Nafco Oil And Gas, Inc., supra. Applying these rules, we conclude that the trial court correctly sustained appellee Doggett's motion for instructed verdict.

As against appellee Doggett, the appellant alleged two acts of negligence, to-wit: (1) Failing to warn the driver of the cattle truck (appellee Tucker) of an alleged "hump" in the roadway; and (2) Failing to remove a "hump" or "piling of dirt" in the roadway leading to the barn, upon which roadway the cattle truck traveled. Each of these acts of negligence was alleged to be a proximate cause of injury to appellant. Although the proof shows to the contrary, appellant alleged that the telephone line leading into Doggett's farm house had been broken at various times before by cattle trucks and vehicles. At the close of appellant's case in chief, appellee Doggett moved for an instructed verdict which the trial court sustained. We do not find any evidence in this record that Doggett was negligent in any respect or that any act or omission on the part of Doggett was a proximate cause of appellant's injury, if any, on the occasion in question.

The evidence disclosed, without dispute, that the telephone line from the intersection where appellant claimed to have received his injury, extending to the little farm house owned by Doggett, had not been broken prior to August 15, 1962, although on one occasion the service drop line from Pole No. 5 leading down to the Doggett house had been repaired. However, the cattle truck did not pass under the service drop leading from Pole 5 to the Doggett house, but passed instead between Poles 4 and 5. There is not a scintilla of evidence in the record that there was a large pile of dirt in the roadway and, in fact, the testimony shows that there was no hump or pile of dirt thereon. Appellant's exhibits do not disclose that there was anything unusual with reference to the roadway and although it may not have been level, it had so existed there a long period of time and was in good condition. Appellee Tucker had driven cattle trucks on this roadway under these lines on other occasions and had no trouble moving under Southwestern's lines. He testified he had no complaints to make about the lines. Witness Everett likewise had no complaint with the line. He testified he had driven down the roadway on many occasions and that the wire looked high enough.

There is not any evidence in the record to the effect that Doggett placed any dirt on the roadway or permitted a pile of dirt to accumulate. As a matter of fact, there is not even any evidence in the record to show that Doggett owned the farm. Certainly, there is not any testimony that anything had occurred which would have put Doggett on notice that there was a dangerous condition of any kind existing in the roadway or would have placed any duty upon Doggett to make any change in the roadway. There being no dangerous condition existing, there could be no duty arising on the part of Doggett to warn Tucker, or anyone else, of anything. On the occasion of the accident on August 15, 1962, the roadway appeared no different than it had on any other occasion. If there had been anything wrong with the roadway or if there had been a pile of dirt or hump thereon, it would have been just as apparent to Tucker as to Doggett. However, Tucker testified that there was nothing wrong with the roadway; that there was no hump on the roadway. Witness Shoemaker testified that there was no hump on the roadway.

Therefore, we conclude that as to the alleged negligence of Doggett that:

(1) There is not a scintilla of evidence raising an issue of negligence against Doggett in either respect alleged by appellant.

(2) There is no evidence that Doggett either placed or maintained a pile of dirt or hump on the roadway traveled by the cattle truck.

(3) There is no evidence that Doggett had any knowledge of any condition whereby he was under a duty to warn Tucker of any hump or pile of dirt allegedly existing in the roadway.

(4) There being no duty on the part of Doggett arising, there could be no breach of duty on his part and therefore, there could be no negligence.

If we assume that there was a pile of dirt or hump in the roadway placed there by Doggett and that Doggett had a duty to warn Tucker of the same, and that he breached such duty, the instructed verdict in behalf of Doggett was nevertheless proper because, as a matter of law, such negligence could not be a proximate cause of appellant's alleged injury. The following principles, being well settled in Texas, are applicable:

■ (1) Reasonable foreseeability is an essential element of proximate cause. Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162, (1896); City of Dallas v. Maxwell, 248 S.W. 667, (Tex.Com.App.), 1923, 27 A.L.R. 927; Panhandle & S. F. Ry. Co. v. Sledge, 31 S.W.2d 146, (Tex.Civ. App.), 1930, Aff. Tex.Com.App., 45 S.W.2d 1112; East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W.2d 613, (1949); Paris & G. N. Ry. Co. v. Stafford, 53 S.W.2d 1019, (Tex.Com.App.) 1932; Safeway Stores v. Brigance, 118 S.W.2d 812, (Tex.Civ.App.) 1938, err. dism.; West Texas Utilities Co. v. Dunlap, 175 S.W.2d 749, (Tex.Civ.App.) 1943, n. w. h.; City of Bryan v. Jenkins, 247 S.W.2d 925, (Tex. Civ.App.) 1952, writ ref., n. r. e.; Gulf, C. & S. F. Ry. Co. v. Bennett, 110 Tex. 262, 219 S.W. 197; Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216, (1942); Uvalde Const. Co. v. Hill, 142 Tex. 19, 175 S.W.2d 247, (1943); San Antonio & A. P. Ry. Co. v. Behne, 231 S.W. 354, (Tex.Com.App.); and Hanson v. Green, 339 S.W.2d 381, (Tex.Civ. App.) 1960, err. ref.

■ If one's negligence is not the immediate or direct cause, but requires an intervention of immediate or direct cause to bring about the result, it is a concurring proximate cause, imposing liability for those responsible for it only when the intervention of the immediate cause and the resulting injury could or should have been foreseen in the light of the circumstances. To find proximate cause against Doggett in this case, it would be necessary to say that by reason of the maintenance of a pile of dirt or hump in the roadway, Doggett could have reasonably foreseen that a truck

would drive along the roadway, drive upon the hump, and by reason of the height of the truck, the same would strike the telephone line, causing it to be pulled down at a place nearly a quarter of a mile from Doggett's house and that the line would fall upon a vehicle being operated upon another highway and as a result of said line's falling, someone would be injured. Such a consequence cannot be said to have been reasonably foreseeable by Doggett.

▮ (2) Negligence which does nothing more than furnish a condition or give rise to occasion which makes injury possible, if such injury is the result of some other cause which reasonable minds would not have anticipated, even though injury would not have occurred but for such condition, is not a proximate cause. Phoenix Refining Co. v. Tips, 125 Tex. 69, 81 S.W. 2d 60 (1935); Panhandle & S. F. Ry. Co. v. Sledge, supra; Missouri-Kansas-Texas R. Co. of Texas v. McLain, 105 S.W.2d 206, (Tex.Com.App.) 1937; Garrett v. Sinclair Refining Co., 94 S.W.2d 1218, (Tex. Civ.App.) 1936, err. dism.; Houston & T. C. R. Co. v. Gerald, 128 S.W. 166, (Tex. Civ.App.), 1910, err. ref.; Houston & T. C. R. Co. v. Maxwell, 61 Tex.Civ.App. 80, 128 S.W. 160, 1910, err. ref.; Wm. Cameron & Co. v. Thompson, 175 S.W.2d 307, (Tex.Civ.App.) 1943, writ ref., w. m.; and Dallas Ry. & Terminal Co. v. Archer, 167 S.W.2d 290, (Tex.Civ.App.) 1943, ref., w. m.

As stated in Missouri-Kansas-Texas R. Co. of Texas v. McLain, supra, 105 S.W. 2d at page 208, "It is the settled law of this state that 'a prior or remote cause cannot be made the basis of an action for damages if it does nothing more than furnish the condition or give rise to the occasion which makes the injury possible, if such injury is the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have occurred but for such condition.' * * *"

If it can be said, and we think the evidence does not show it, that Doggett allowed a hump or pile of dirt to remain in the roadway over which the cattle truck traveled, this did nothing more than furnish the condition and if, in some remote way thereafter, injury to someone occurred, the mere maintaining of such a condition in the roadway could not be a proximate cause because it was not reasonably foreseeable that an intervening force (the cattle truck striking the telephone wire) would contribute to or cause such an injury as that claimed by appellant. From the mere maintenance of a hump in the roadway, it could not have been reasonably anticipated by Doggett that an injury such as appellant claims would result a quarter of a mile away in the manner in which it did occur.

▮ (3) Foreseeability as an element of proximate cause does not include consequences which arise from unusual or extraordinary occurrences. City of Dallas v. Maxwell, supra; Trinity & B. V. Ry. Co. v. Blackshear, 106 Tex. 515, 172 S.W. 544, L.R.A.1915D, 278; International-Great Northern R. Co. v. Lowry, 132 Tex. 272, 121 S.W.2d 585; Missouri-Kansas-Texas R. Co. of Texas v. McLain, 133 Tex. 484, 126 S.W.2d 474; and Moody v. Clark, 266 S.W.2d 907, (Tex.Civ.App.) 1954, writ ref., n. r. e.

In the Moody case, it was alleged that one of the defendants had negligently left some lumber in a street near the curb. An automobile was parked nearby and two children in the automobile, in attempting to manipulate the automobile, caused it to suddenly and violently move forward running upon the lumber and over the curb, causing damages. The court held that leaving the inert lumber in the street near the curb was a mere condition upon which the active negligence of the children operated, and that the lumber itself did not in any sense cause the accident and any negligence in leaving the lumber in the street could not be a proximate cause of the plaintiff's damages. The Moody case is closely an-

alogous to the case now before this court if we assume that Doggett permitted a pile of dirt or hump to remain in the roadway.

(4) An intervening cause will be regarded as the proximate cause, and first cause as too remote, where the chain of events is so broken that they become independent and the result cannot be said to be the natural and probable consequence of the prior cause or one which ought to have been anticipated. 65 C.J.S. Negligence § 111, page 685; City of Waco v. Teague, 168 S.W.2d 521, (Tex.Civ.App.) 1943, n. w. h.; Cox v. Ekstrom, 163 S.W.2d 845, (Tex. Civ.App.) 1942, writ ref., w. m.; Reeves v. Tittle, 129 S.W.2d 364, (Tex.Civ.App.) 1939, err. ref.; English v. Terry, 85 S.W.2d 1063, aff. 130 Tex. 632, 112 S.W.2d 446; North American Acc. Ass'n v. Adams, 32 S.W.2d 525, (Tex.Civ.App.) 1930, n. w. h.; City of Waco v. Branch, 8 S.W.2d 271, (Tex.Civ.App.) 1928, err. ref.; Magnolia Petroleum Co. v. Cocke, 3 S.W.2d 139, (Tex.Çiv.App.) 1928, err. ref.; and Garner v. Prescott, 234 S.W.2d 704, (Tex.Civ.App.) 1950, n. w. h.

It is our conclusion that even if there had been a pile of dirt or hump in the roadway and even if it was left there under the circumstances as to constitute negligence, the same could not be a proximate cause of appellant's injury, as alleged, because (a) the type of injury sustained by appellant one quarter of a mile from the premises of defendant was not reasonably foreseeable to defendant, and (b) the pile of dirt or hump was not in fact a cause of appellant's injury because of the intervening agency of Tucker's cattle truck striking the telephone line, thereby causing it to be pulled down at the intersection where the accident occurred. Foreseeability and causation are two necessary elements of proximate cause. Hanson v. Green, supra; Biggers v. Continental Bus System, Inc., 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359.

Appellant, by his final Point of Error No. 6, contends that "The trial court erred in submitting the issue of unavoidable accident to the jury because said issue was not raised by the evidence in the case." The jury by its verdict exonerated appellee Southwestern and appellee Tucker of negligence. "Unavoidable accident" was submitted by the court to the jury in Special Issue No. 6–A. The term was properly defined. See Dallas Railway & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379, 1952. The evidence was such that the jury could well have believed that although Tucker's truck struck the line, this conduct was not negligence because he had been under the line on previous occasions without coming in contact with the line. The evidence showed that where Homer Lee Tucker went under the line was about 1200 feet from the point where the line was pulled loose over the highway. There were four telephone poles between these two places and the wire was so installed that it would slip on the connections at these four poles.

There was no evidence as to the height of the wire over the driveway where the cattle truck apparently hit it prior to this accident. There was testimony that the line was broken at this point on the occasion in question and that after it was spliced back together, it was measured and found to be at a height of 12 feet and 10 inches.

The height of the truck being driven by Homer Lee Tucker was established at 13 feet 4 inches. The law permits a truck to be 13 feet and 6 inches.

The evidence also shows that Homer Lee Tucker had driven this same truck under the wire at the same place on several previous occasions and that he had not hit the wire so far as he knew. Another witness, Billy Don Everett, testified that he had driven this same truck under the same wire on prior occasions without hitting the wire so far as he knew.

Tucker could not say whether his truck struck the line, but is is apparent that it did and the jury so found; the jury could well have believed that such conduct on his part did not constitute negligence. Moreover, it was stipulated that the telephone line from the intersection where the accident occurred to Pole No. 5 had never been broken prior to August 15, 1962. There was no evidence of any defect in Southwestern's line or the manner in which the same was maintained and there was an absence of any evidence that Southwestern had any knowledge or notice that the line was in any way defective or that Tucker was driving his cattle truck thereunder on the date in question.

We think that under the facts and circumstances of this case the issue of unavoidable accident was clearly raised by the evidence and the court properly submitted the issue thereon to the jury. However, if there was error in the submitting of the issue, which we do not so hold, it was harmless because the jury did not find primary negligence against appellee Southwestern or appellee Tucker. Leatherwood Drilling Company v. TXL Oil Corporation, 379 S.W. 2d 693, (Tex.Civ.App.) 1964, writ refused, n. r. e.; Webb v. City of Lubbock, 380 S.W. 2d 135, (Tex.Civ.App.) 1964, writ refused, n. r. e.; Adkins v. Texas & P. Ry. Co., 233 S.W.2d 956, (Tex.Civ.App.) 1950, err. ref.; Nelson v. Dallas Railway & Terminal Company, 302 S.W.2d 436, (Tex.Civ.App.) 1957, writ ref., n. r. e.; and Smith v. Morgan, 235 S.W.2d 938, (Tex.Civ.App.) 1950, err. dism.

Appellant by his Point of Error No. 5 complains that the court committed error in refusing to submit numerous Special Issues requested by appellant on the negligence of appellees Southwestern and Tucker. We have carefully examined appellant's Point of Error No. 5, find it to be without merit, and accordingly same is overruled.

Finding no reversible error, the judgment of the trial court is affirmed.